WILES, *Petitioner*, v. ROBINSON AND THE UNION BANK OF TRENTON, *Appellants;* WILLIAMS AND WIFE, *Respondents; other Defendants not Contesting.*

1. **Practice**: AMENDMENT. The court did not err in permitting the filing of an amended answer at the trial in this case.

2. **A Fraudulent Contract.** The evidence justified the court below in finding a contract in question in this case to be fraudulent.

3. **Payment by Note.** The giving of a note for an existing indebtedness, is not a payment of the debt, unless it is given and accepted as such.

*Appeal from Daviess Circuit Court.*—HON. S. A. RICHARDSON, Judge.

REVERSED.

*J. F. Hicklin, Geo. Hall, S. Perry* and *Gillihan & Brosius* for appellant Bank.

*Shanklin, Low & McDougal* for appellant Robinson.

*J. W. Alexander* and *W. C. Collison* for respondents.

EWING, C.—This was a bill, in the nature of a bill in equity, by Wiles, as trustee of an express trust, showing to the court that there were conflicting claimants to the trust fund, and praying the court to construe the instrument creating the trust and direct how the money should be paid.

The answer of some of the appellants insisted that the instrument asked to be construed was not a deed of trust to secure the payment of certain named creditors, but a general assignment for the benefit of all the creditors. This question cannot be reviewed by this court, for the reason that the instrument is not in the record; is not preserved in the bill of exceptions; is not before the court, and hence cannot be examined and passed upon. The circuit court held it to be a deed of trust for the payment of the parties

therein named, and its judgment must be conclusive as to that point.

The questions mainly contested in this case are as to the claims of William Robinson and Robert C. Williams. It will, therefore, be necessary to present the pleadings of those parties upon which these questions arise, and the evidence in relation to the contested claims. The controversy arises upon the pleadings of the defendants, as between themselves; all of them being beneficiaries in the deed of trust. The appellants are William Robinson and the Union Bank; but whose interests are by no means harmonious; they appealing upon separate bills of exception.

## I.

The Union Bank, appellant, answered, denying that the defendant Robinson, as the security of Wynn, had paid the sums alleged, and, therefore, not entitled to re-imbursement from the trust fund; denying that the instrument was a deed of trust, and charging it to be a general assignment; alleging that Robinson had rented the land in the deed of trust from Wynn for 1877, and owed therefor $1,800, and that he was thereby over-paid what he (Robinson) had paid for Wynn's security, and hence not entitled to any part of the trust fund.

The appellant William Robinson answered and denied that the deed was a general assignment, but alleged it to be a deed of trust; then setting up the sums of money he had paid for Wynn before the sale by the respondent trustee, denied that he owed Wynn $1,800 for rent, and alleged that he had entered into a written contract with Wynn to pay $730 rent, and asks to be re-imbursed out of the trust fund.

Robert C. Williams answered that Melvina Wynn, one of the defendants, was one of the beneficiaries in the deed of trust, as shown by plaintiff's petition; that in January, 1877, Pembroke S. Wynn, with Melvina Wynn, executed and delivered their notes to the said R. C. Williams for

about $800, and to Elinor Williams for about $400; that prior to the sale by the trustee, Melvina Wynn, the security, paid off and fully discharged the said two notes amounting to about $1,200; that afterward, in November, 1877, the said Melvina Wynn sold and assigned to this defendant, R. C. Williams, all her right, title and interest in the trust fund in plaintiff's hands accruing to her as one of the beneficiaries by reason of having paid off said debt as security; and asks judgment for Melvina Wynn's interest by reason of the assignment to himself.

The other pleadings are practically unimportant for the determination of the case, except the reply of the Union Bank to the answer of the said Robinson, wherein it is alleged that the written contract for rent between said Robinson and Pembroke S. Wynn was entered into to hinder, delay and defraud the creditors of said Wynn; and that said Robinson rented said land and took charge thereof under and by virtue of an oral agreement, and not under the written contract.

The evidence concerning the claim of Robinson was substantially as follows: Robinson himself testified that he paid the claims mentioned in the deed of trust upon which he was security; giving names, dates and amounts aggregating $1,623.61, and all paid before the sale by the trustee. The witness then produced the written contract between himself and Pembroke S. Wynn, which was in substance that he had rented the land and certain teams and farming implements for 1877 and was to pay therefor $730. He was then examined as to the annual rent value of the land; out of which he testified he realized some $450, after paying what he had advanced. He also testified that before he entered into the written contract with Wynn he knew Wynn owed one Ashbrook, who had sued him, and that Wynn wanted the rent to go to his securities rather than that it should go on Ashbrook's execution. Other evidence tended to show the annual rental value for

1877 of the farm Robinson rented was about $1,600 or $1,700.

Wynn was then introduced, who testified that the contract made in writing was merely drawn up and executed with a view of "keeping Ashbrook off; we were to be governed by the verbal agreement. The verbal agreement was that Robinson should furnish the money to pay taxes in Daviess and Grundy counties, also a coupon I owed for $200. I was to run the farm and control and manage it in the name of Robinson. I was to make all I could off of the farm, and was to pay the proceeds to Robinson to reimburse him, first for the money he might furnish in paying coupon and taxes, and next on the debts for which he was security for me as specified in the deed of trust, until fully paid, and the balance, if any, to other securities mentioned in the deed of trust."

This was substantially the evidence as far as the Robinson claim was concerned, except that the interest of Wynn therein was assigned to DeBolt.

The claim of Robert C. Williams was then taken up and to sustain the same Williams was himself sworn as a witness, and testified as follows: "About the 10th day of November, 1877, Melvina Wynn lifted the notes—one payable to me and one to my wife, Mrs. E. Williams—mentioned in the deed of trust, by giving her individual note in their stead. The new note was for the principal and interest of the two notes mentioned, and was for $1,227.03. She gave me her individual note only, and this I accepted in full payment of and for two notes I gave up. I gave or sent blank note to P. S. Wynn and requested him to get her to sign it. P. S. Wynn delivered me the renewal note on the morning of the trustee's sale, November 24th, 1877; I then delivered him the two notes mentioned in the deed of trust to deliver to Mrs. Wynn. After the trustee's sale I went to see Mrs. Wynn, and told her that she or I, one, had the right to draw a proportion of the proceeds of trust sale. She said she could not pay her note; if I could get

anything from trustee I might; she did not assign me her claim in writing, but she gave me all her interest in the proceeds in the hands of the trustee, and I agreed to give her up the new note I held on her alone for the proceeds of the sale in the hands of the trustee coming to her, and the said note has at all times been subject to her order, and she is entitled to it, and can get it at any time. I don't claim to own it." The evidence then tended to prove that Melvina Wynn pretended to pay off the Williams notes by giving her own in their stead; that she was insolvent; that Williams knew it; that she never paid the notes she gave; that the transaction was avowedly made to keep " Robinson from gobbling up " the whole of the trust fund.

## II.

As to the claim of William Robinson. He complains of the action of the court in permitting the Union Bank to amend its answer on the trial, setting up that he (Robinson) rented the farm from Wynn and held it under a verbal contract and not under the written agreement. This was not error. It could not have injured the defendant Union Bank, because there seems to be no doubt but that such verbal agreement was made between Robinson and Wynn. If it had been a surprise to the bank it could have had a continuance upon proper terms if the right and legal course had been pursued at the time.

## III.

We are of opinion the court below was justified by the evidence in holding that the written contract between Robinson and Wynn, for the rent of the farm for 1877, was made to hinder, delay and defraud the creditors of Wynn. The evidence tended to show that the rental value of this farm was more than double the amount Robinson agreed to pay under the written contract; that it was made with the view of " keeping Ashbrook off;" that Robinson knew of Ashbrook s claim at the time, and knew that Wynn did

not want Ashbrook to get anything under his execution. The circumstances all tended to prove that the object of Wynn was to cover up what might be made out of the farm, and Robinson knew it. We are not, therefore, disposed to interfere with the finding of the circuit court upon this question. If this contract was void, of course DeBolt's assignment thereof was worthless. An assignment of a void contract could confer no rights on the assignee. The finding of the court as to the written contract leaves the verbal agreement between Robinson and Wynn the only contract which governs the rental of the farm for 1877 ; under which the evidence justifies the conclusion of the circuit court. It is true the evidence shows that Robinson had possession and use of the farm for only a part of the year, yet that part, from April to September, was sufficient for him to harvest all his corn and hay, in which it was principally cultivated.

## IV.

The next question arises upon the claim of Williams. In its finding upon this claim we are of opinion the circuit court erred. The evidence to show that Mrs. Melvina Wynn had paid off all or a part of the debt for which she was security, as contemplated, is not sufficient. It only shows that she gave her note for the amount, but the note was not paid, and she was insolvent when she gave it. There was no consideration, therefore, passing from Williams to her for any interest she might have in the trust fund. She could have no interest therein until she had paid the money. Hence there was nothing she could assign. The giving of her note was not a payment of the debt unless it was so given and accepted, and the evidence does not bear such construction. *Leabo v. Goode*, 67 Mo. 126 ; *Pitzer v. Harmon*, 8 Blackf. 112 ; *Romine v. Romine*, 59 Ind. 346.

The judgment of the circuit court is, therefore, reversed and the cause remanded, with instructions to enter

up judgment in accordance with this decision. All the commissioners concur.

NORTON, J., absent.