## Martha McClung v. Joseph McClung.

*Reopening proofs—Extreme cruelty—Alimony.*

Where there is nothing to hinder a party from taking his proofs within the time allowed by rules of practice, and from cross-examining the witnesses of his opponent, and he neglects to do so, he cannot get leave afterwards to bring in contradictory testimony without a strong showing that justice requires it, and that he has not been so far at fault as to have forfeited his claim to favor.

A court is not bound to extend favors to those who disregard its authority.

It is often proper to open proofs generally and allow farther testimony to be taken on both sides, but was seldom allowed under the old practice, and is matter of discretion.

It was the English chancery practice to close proofs before either party could know what had been sworn to, and after publication they were rarely opened to admit contradictory evidence.

Proofs are not usually withheld on one side of a chancery cause, until they are concluded on the other.

A complainant may have special equities making it proper to reopen proofs for his benefit without allowing defendant to put in farther testimony.

Defendant in a divorce suit vexatiously refused to pay alimony and withheld means that he was bound to give complainant for expediting her cause. Meanwhile he took no proofs himself until after the time allowed by rule had expired, and then, while still in contempt by his refusal to pay alimony, asked leave to introduce proofs. *Held* that permission was properly refused.

It may be supposed that licentious persons of opposite sexes, consorting together and holding loose views of the marriage relation, commit such offenses as they have opportunity to commit.

It is extreme cruelty to a wife for her husband openly to consort with and express his preference for loose females.

The allowance of alimony in gross instead of by periodical payments is approved in cases where the husband would be likely to vexatiously delay or withhold payments.

Damages were imposed in a divorce suit in lieu of interest and allowances to the wife, for vexatiously delaying her and for her expenses in carrying on her suit.

Appeal from Berrien. Submitted January 31. Decided April 9.

DIVORCE. Defendant appeals.

*Edwards & Sherwood* for complainant.

*Franklin Muzzy, Edward Bacon* and *Spafford Tryon* for defendant.

CAMPBELL, C. J. Mrs. McClung filed her bill for divorce on the grounds of cruelty and adultery. The causes of trouble, so far as they appear in the proofs, are very closely connected, and arose chiefly from conduct of an improper character with two women named Taylor and Jadwin. The defense rests on *either* denials or explanations of the conduct complained of, and on the claim that defendant was wrongfully prevented from putting in his proofs. The last point requires consideration by itself.

The case was put at issue June 3d, 1876, and the time for taking testimony was enlarged by stipulation

until some time in February, 1877. On the 10th of that month an order was made based on defendant's contempt in not paying alimony, whereby, among other things, proceedings on his part to take testimony were stayed till further order. Time was thereafter allowed complainant upon showing to take further proofs. They were finally closed in November, 1877, and the court refused to open them.

There is nothing to indicate that defendant was deprived of taking any testimony he intended to take before the original time had run out. His affidavits made on more than one occasion indicate that he did not intend to introduce testimony to controvert the complainant's proofs until some of her later witnesses had shown facts which seemed to him worthy of reply.

We find nothing which satisfies us that he had not the fullest opportunity of cross-examining complainant's witnesses, and it was in most cases exercised as fully as justice required, and more fully in some cases than propriety demanded.

As to his own proofs of which he claims to have been deprived, we do not think tho theory set up is the correct one. Every person from the allegations in the issue made is supposed to understand that an attempt will be made on either hand to prove or disprove each important fact. It is expected that each party will proceed within the time fixed by the rules of practice to introduce such proofs as will make out his cause or defense. Under the English practice the whole testimony was closed before either party was at liberty to know what had been sworn to. After publication it was a very rare thing to open proofs so as to allow contradictory evidence to be put in, because of the danger of fabricating testimony for the occasion. Our practice prevents surprise by allowing open examinations. But it has never been customary to favor the practice of keeping back testimony on one side until proofs are concluded on the other. The court necessarily retains

power to protect parties against surprise; but no one can be allowed to wait beyond the ordinary period for closing proofs, and then get leave to bring in his contradictory testimony without showing very clearly that justice requires it, and that he has not been at fault so far as to have lost his claim to favor. *Thayer v. Swift*, Walk. Ch., 384; *Hamersly v. Lambert*, 2 Johns. Ch., 432.

While it is undoubtedly competent, and often proper to open proofs generally and allow further testimony on both sides, yet under the old practice that was seldom if ever done, and the occasion for further proofs may affect one party, or one party may have special equities. It was not irregular to allow complainant to take proofs when such liberty was not extended to defendant. As to its propriety these considerations appear plainly: defendant pertinaciously and vexatiously refused to pay the alimony ordered by the court, and put complainant to inconvenience and offensive annoyance. She had not the means he was bound to give her of expediting her cause. On the other hand, defendant could at any time have taken his own proofs, and when he applied to the court for what was matter of favor and discretion, he was still in open contempt, and his affidavits were contradicted, and in some respects at least palpably false. We are not called on to consider whether the court can deprive a party of a right, in addition to the usual punishment for contempt. It is certain that no court is bound to extend any favors to persons who disregard its authority.

We think the cause was properly heard on the testimony.

The case made by the bill rests upon charges of cruelty, involving misconduct with other women and adultery. The specific charges of adultery mention only the name of one Sarah Taylor. The proofs refer in addition to Minerva Jadwin, who is not mentioned by name in the bill, although coming within some of its general references. The court below granted a divorce for cruelty,

regarding the misconduct shown as amounting at least to that. The defendant claims that complainant was a consenting and implicated party in all of the grievances chiefly relied on, and denies either cruelty or adultery.

It would serve no good purpose to enlarge upon the details of this case. An outline of the facts will serve to explain its character.

The parties were married very young, and are now between fifty and sixty years old. Both were in moderate circumstances, and neither refined nor cultivated. They were frugal and industrious, and from their marriage in 1840 until they removed to Michigan in 1851, had accumulated some property. From 1851 until 1869 or 1870 they lived on a farm near Niles, and during that period defendant became comparatively wealthy. They then moved into the city of Niles, where they have since lived, and where defendant has considerable investments in property. They have one child, a son who has been for several years settled on a farm with his family.

Some time after moving to Niles, the parties who had previously been connected with the Methodist church, became attached to spiritualism, and Mrs. McClung became a medium, under the supposed influence of an Indian whom they called Kenowassa. Their house was much resorted to for meetings, and they visited other places to attend them.

Three or four years before the bill was filed, the bill claims, and we think the proofs show, that defendant took up, in addition to his former doctrines, opinions in favor of freedom from the obligations of the marriage relation, and unrestrained liberty of conduct. Complainant claims that the result of this was a change in his treatment of her, including not only neglect, but abuse and cruelty in various ways, aggravated by misconduct with other women.

Defendant insists that complainant herself entertained the same loose opinions, and denies that he was guilty of any actual misconduct.

40 MICH.—63.

The testimony of a large portion of the witnesses is open to scrutiny. They appear to be, in the main, fanatics and vagabonds, on whose unsupported evidence it is not satisfactory to act. It is certain that complainant had in her house inmates who were coarse and not very decent in their ideas, and that she has continued to have such associates. But after a careful view of the facts, we think it appears that complainant, though not refined, has never ceased to have virtuous notions, and that she suffered in mind and body from the conduct of her husband. He ceased to have any personal regard for her, and not only persistently annoyed her with offensive displays of his depraved sentiments, but manifested and openly expressed his dislike to her and his preference for other women, who held the same opinions with himself. No one can doubt that depraved persons holding such sentiments and consorting together committed such offenses as they had opportunity to commit. And it would be hard to conceive of any worse cruelty to a wife, who had any sensibility left, than such a course of conduct. No assault or bodily injury could make it worse.

Without dwelling on the facts, we think a case of cruelty was made out. And we think there was full proof of adultery,—although, possibly, if this were the only cause alleged, an amendment of the bill might have been required.

We think the decree for alimony should not be disturbed. The experience of the past shows that if an annuity had been granted, instead of a gross allowance, defendant would probably resort to every means in his power to avoid its regular payment. We do not think complainant should be any longer exposed to the annoyances which any dealings with him are likely to bring. There is some difficulty in arriving at the truth concerning the exact extent of defendant's means. We do not feel disposed to question the correctness of the conclusions of the circuit judge on this head. The time for

making the payments may be counted from the date of our own decree of affirmance. In addition to the amounts decreed, defendant must include in the first payment an additional sum of twelve hundred dollars in lieu of interest and allowances to complainant for the delay and for her expenses in this suit beyond taxed costs. The decree must therefore be affirmed with costs, with these additions and modifications.

The other Justices concurred.