EVA E. PALMER v. LEVANT D. PALMER.

*Divorce—Extreme cruelty—Execution for temporary alimony not issuable.*

A wife went to the house of her parents to be confined, and did so against the objection of her husband who, however, was living with his own parents, and whose household arrangements were not therefore interfered with. When she was confined she sent word to him, but he did not go to see her at first, and when he did go in reply to a

reproachful letter from her, he told her he had received a letter from her full of lies, and had come to warn her that if she was not back before the issue of the next week's paper he should advertise her; he also intimated that the child was her father's and not his own, saying that if it had been, it would have been born at home, but now it had been delivered where it belonged. *Held*, a case of extreme and wanton cruelty entitling the wife to a divorce.

Execution cannot be awarded under Act 44 of 1877, to enforce the collection of temporary alimony.

Appeal from Ingham. Submitted Nov. 10. Decided Jan. 5.

DIVORCE. Defendant appeals. Affirmed.

*H. P. Henderson* for complainant. The facts are within the definition of extreme cruelty. *Cooper v. Cooper* 17 Mich. 205; *Goodman v. Goodman* 26 Mich. 417; *Bennett v. Bennett* 24 Mich. 482.

*M. V. & R. A. Montgomery* for defendant.

COOLEY, J. This is a bill for divorce on the ground of extreme cruelty. The parties were married in October, 1874. In October, 1875, a child was born to them, and in 1877 complainant was pregnant a second time, and went to the house of her parents a few miles away to remain until after confinement. The husband seems to have objected to this, but nevertheless went with her, and then returned to his own residence. When the second child was born she sent him word, but he did not come to see her, and in a few days she sent her father over to ascertain why he did not come. The father testifies that " he said we had undertaken to run his business, and we might continue to do so: he should not run after her: she might go to the devil." This was repeated, and as the father was going away he said if his wife was not back as soon as she could come he should commence legal proceedings. When this was reported to complainant she wrote him a reproachful letter, and he then went to see her. According to the evidence he commenced the conversation by saying he had just got a letter from her full of lies, and he had come to warn her that if she was not

back before the next week's paper was issued he should
advertise her. He then turned to go away and she called
him back, but this only made matters worse, for before he
left he by indirection charged her with incest with her
father, intimated that the child just born was not his own,
and said that if it had been it would have been born at home,
but now it had been delivered where it belonged. At this
time the wife was still confined to the bed. He actually
went then, as he had threatened, and advertised her in the
next issue of a local paper as having deserted him.

In the evidence produced nothing appears to justify or
excuse the defendant's conduct, unless it is to be found in
the wife's desire to be confined at her mother's notwithstand-
ing his wish that she should remain and be confined at
home. They were then living with his parents, and there
was nothing unnatural or unreasonable in her desire to be
with and have the assistance of her own mother. Few men
under like circumstances, it is to be hoped, would have
made objections. It put him to little or no trouble, and to
no cost, and it did not interfere with ordinary household
arrangements. His failure to visit his wife immediately on
receiving notice of her confinement stands wholly unexcused,
and his conduct when he did so fully justifies us in holding
that it makes out a case of extreme and wanton cruelty, and
would entitle the complainant to a divorce without any aid
from the subsequent insult in the newspaper. If she was a
decent and self-respecting woman—and there is no evidence
to the contrary—she could not with comfort cohabit as wife
with the defendant afterwards. *Briggs v. Briggs* 20 Mich.
34. The decree granting a divorce must be affirmed.

An order for temporary alimony was made before final
decree, and an execution issued for its collection. This is
supposed to be authorized by Public Acts 1877, p. 32, but
that statute applies to permanent alimony only. The order,
so far as it awards execution, will therefore be reversed. The
circuit court reserved the question of permanent alimony,
and the custody of the children, and the record will be
remanded that they may be dealt with.

The other Justices concurred.