# McMahan v. McMahan.

### Divorce—Sufficient Grounds for.

Where a husband falsely accuses his wife with familiarity with other men, and infidelity to her marital vows, and accuses her with having the venereal disease, which she had communicated to him, such accusations are a sufficient ground for divorce.

Appeal from Linn.

*Strahan & Bilyeu*, and *N. B. Knight*, for appellant.

*Bonham & Ramsey*, for respondent.

By the Court, Lord, C. J.:

This is a suit for divorce. The facts necessary to be considered, and substantially alleged, are that soon after the marriage the complainant charges that the defendant began to manifest toward her a suspicious and jealous disposition, and to charge her, by hints and innuendo, with improper familiarity with gentlemen of her acquaintance, and of her neighborhood; that he continued, from day to day, to be more explicit in his charges, and to charge her with infidelity to her marriage vows; that on or about the 11th day of November, 1879, the defendant, in a violent, abusive and brutal manner, charged complainant to her face with being afflicted with a loathsome venereal disease, and with having communicated the same to him, and repeated the charge to Thomas Brandon, a neighbor, and to other neighbors of complainant, to her great scandal and shame; that each and all of such accusations so preferred by the defendant against the complainant are utterly false and grossly slanderous, etc. These facts being specifically controverted, and issue thus joined, upon the hearing, the court granted a divorce to the complainant. Do these facts, if proven, constitute a sufficient ground for divorce?

In *Smith* v. *Smith*, 8 Or., 101, it was held, that if a husband or wife, either, falsely accuse the other of an unchastity, such accusation is a sufficient cause for divorce. The court

say: "Such an accusation, by either the husband or wife against the other, has often been held sufficient cause for a divorce, and many divorces have been granted for such causes, and it is now the settled law of this state that such accusation is sufficient cause for a divorce. But while counsel for the appellant concede that this accusation may be sufficient in some cases, they still claim that it is not sufficient in this case, because these accusations were made after the parties were separated and had ceased to live together as husband and wife. We think this makes no difference, for neither a husband nor wife can claim a right to continue the marriage relation while falsely charging the other with unchastity. No domestic happiness or peace can be expected to exist between parties thus falsely criminating each other."

Now the complaint in this case does allege, in direct terms, that the defendant charged the complainant not only with familiarity with gentlemen of her acquaintance, but with unchastity—with infidelity to her marriage vows—and, by reason thereof, with being afflicted with a loathsome venereal disease, which the complainant had communicated to him, and which fact he had repeated to their neighbors, to her great shame and scandal. Certainly no more cruel nor brutal method could have been selected to wound the feelings of a chaste wife, and cause her the most poignant grief, than accusations thus made by her husband. For they involved not only the charge of adultery, but of that vile and miscellaneous sort which bore him the twin fruits of dishonor and disease. And if these accusations were false, as alleged to be—if his wife had kept a stainless purity of life, and a true faith to her marriage vows—then the uttering of such false and slanderous accusations against her fair name and fame, was cruel treatment which furnished her a just ground for the dissolution of the marriage tie, and the court below did not err in granting her prayer for a divorce.

The next and only question is, does the evidence sustain the facts alleged in the complaint? It appears that soon after the

marriage, for some reason not made manifest by the evidence, the defendant indulged in much unjust and groundless suspicions and accusations against the marital integrity of his wife. It would be generous to him to suppose that much of this was due to the peculiarity of his disposition, which seems ever to have been on the alert to discover something which might be construed into an adulterous inclination, or an act of marital infidelity in his wife; but, certainly none of the things charged directly, or even hinted at by him, find any support whatever in the evidence. In his own testimony, he refers to circumstances and relates conversations indulged in by his wife—much of which is too filthy and disgusting to mention—in which he makes her impeach her own chastity, and declare herself wedded to the doctrine of Free Love by nature and inclination, that finds no support outside of his evidence, is contradicted by her, by her life and reputation, as known and testified to by many highly respectable citizens, and by his own acts and some declarations.

It seems that prior to and at the marriage, his wife had been and was a member and officer of the Good Templars' lodge, and as such-it became her duty, soon after the marriage, to attend the lodge for the purpose of paying over money in her possession belonging to the lodge. She went, and upon her return she found him cross and surly at her absence, although he knew she was going and made no objections; but discovering then that he was strongly opposed to her attending the lodge, to please him, and to avoid domestic trouble and difficulty, she told him she would not attend any more, nor ever did afterwards, according to the evidence, while they continued to live together. Notwithstanding this concession to his wishes, he intimated that her object in attending the lodge was for purposes of doubtful propriety; in effect, that it was the rendezvous of persons of doubtful character, and finally charged that the lodge was a "house of ill-fame." Against accusations thus involving the purity of her womanhood, and her chastity as a wife, she protested, and he, it

would seem, to fasten more firmly the truth of his charges against the lodge, and evidently to wound more deeply her already lacerated feelings, undertook to name the gentlemen from whom he professed to derive this information, and whom he declared would confirm the truth of his statements. It is sufficient to say that the gentlemen referred to, when sworn in this case, denied any such conversation or statements.

This was the beginning of their troubles, and from this time until their final separation, several months afterward, occur a series of circumstances which it is unnecessary to detail, but in which her conduct is suspected and impugned for trifling and often imaginary causes, and charges of marital infidelity, either directly or indirectly, reiterated and repeated, which, judged by the evidence, were untrue, and even the explanations of the defendant's testimony fail to furnish the slightest ground of justification. The result of all this was, that she became miserable and unhappy, and her health impaired, under the accumulated weight of these accusations and grievances; and doubtless, conscious that no domestic peace or happiness could exist in the absence of respect and confidence, she finally told the defendant that they must separate; in brief, that it was impossible for them to live longer together while he continued to suspect and make accusations against her chastity. And just here his conduct seems to indicate that he had compassed his end, and intended to force a separation, then and there, which should be final; for to insults and injuries already inflicted, he deliberately made a charge which, to a sensitive, refined and virtuous woman, must have inflicted pain not less intense and cruel than brutal blows. He declared that she had the venereal disease, and had communicated it to him, and that he would swear to it on a stack of bibles as high as he could reach; and not content with making this accusation to her face, he repeated it to Mr. Brandon, a neighbor, all of which he admits in his testimony, and says: " Mr. Brandon said 'if my wife would serve me in that way I would leave her right off.'" More-

over, when interrogated in respect to this disease, for the purpose of ascertaining the facts or truth about it, the evidence discloses that he had consulted no physician, that he had "treated it himself, from what he had heard others say who were afflicted with it;" and finally, when asked whether "he ever had any personal experience with the disease himself," he sought to stop the investigation by declining to answer the question.

Some argument was made to the effect that this disease might exist and be communicated to a husband by a virtuous wife; that such might be the facts in this case, and that the accusation did not therefore necessarily include a charge of adultery. The record in this case forbids any such inference or conclusion. What he intended and meant by this accusation, and how it was understood by his wife, and by Mr. Brandon, when repeated to him, in the light of what had preceded it, is a matter too plain for construction, argument or comment. It is true he went to see her after the separation, and requested her to return to his home, but there were other consequences growing out of the separation, the record discloses, which might have induced this, independent of the inconsistencies of his own conduct, if he believed in the truth of what he had sworn to. It must be observed that both of these parties had been previously married, and were near the meridian of life. The defendant admits that his wife always associated with the best people in their community. Indeed, their neighbors are unanimous in their testimony—some of whom had known the plaintiff for thirty years—in bearing testimony to her worth and high standing as a chaste, refined and estimable lady. From the record before us we discover no error, and the decree of the court below is affirmed.

Decree affirmed.