## Jones v. Jones.

Abuse which causes mental suffering and thus produces ill-health, rendering cohabitation physically unsafe, is legal cruelty and ground for divorce.

Whether abuse, unaccompanied by violence to the person, in a given case, affected the mental and physical health, is a question of fact to be decided at the trial.

LIBEL FOR DIVORCE, alleging that the parties were lawfully married August 14, 1882; that they commenced living together as man and wife August 19, and lived together until August 25, 1882; that on the day last named the defendant charged the plaintiff with the crime of bigamy, told him that he had no right to marry her because he had a wife living, and said she would never live with him again; that in company with her father and brother she left him, taking with her all his clothing and underclothing; that he has never seen her since, nor has she restored to him his property up to the time of the filing of the libel (February 26, 1883); and that at the time she left him she threatened to prosecute him for the crime of bigamy and send him to the state prison. The plaintiff denied the charge of bigamy, and offered evidence to sustain all his allegations; also that the defendant told him " if he would give her $500 she would not prosecute him, but would never live with him again, and if he did not give her $500 she would send him to the state prison." He also offered to prove that he had been legally divorced from a former wife. He asked for a divorce on the ground of extreme cruelty. The defendant was defaulted.

*J. W. Towle*, for the plaintiff.

SMITH, J.   It is contended that the defendant's conduct in the particulars alleged comes within the true construction of the statute making "extreme cruelty of either party to the other" (G. L., c. 182, s. 3) a cause for divorce. It is not charged that the defendant has inflicted or offered violence to the person of her husband, by blows or force, or threatened to do him bodily harm. It is not even charged that the conduct of the defendant has occasioned the plaintiff bodily or mental injury; but such, we understand, is his position. The question then is, whether abuse which operates on the mind, and thus produces ill-health, is legal cruelty.

The word "extreme" is used in the statute for the purpose of giving to the conduct of the guilty party the character which the word implies. Cruelty as a matrimonial offence is defined to be "such conduct in one of the married parties, as, to the reasonable apprehension of the other, or in fact, renders cohabitation physically unsafe to a degree justifying a withdrawal therefrom." 2 Bish. Mar. & Div., s. 717, and authorities cited. Under our statute the injury must undoubtedly be of a serious or permanent character, or the conduct must be such as to cause reasonable apprehension of such injuries. In the leading case of *Evans* v. *Evans*, 1 Hag. Cons. 35, the doctrine is laid down that "there must be

either actual violence committed, attended with danger to life, limb, or health, or there must be a reasonable apprehension of such violence." And such is the doctrine of most of the cases.

In *Harratt* v. *Harratt*, 7 N. H. 196, *Parker*, J., laid down the law as follows; "That cruelty may be extreme without blows cannot be doubted, and we have no difficulty in holding that when the causes are grave and weighty, and such as to show an impossibility that the duties of the married life can be discharged, when violence is menaced, and there is reasonable apprehension of danger to life, limb, or health, the case comes within the statute, and that the court ought not to wait until the hurt is actually done."

In *Poor* v. *Poor*, 8 N. H. 307, 316, *Richardson*, C. J., said,— "In the judgment of the law, any wilful misconduct of the husband which endangers the life or the health of the wife,—which exposes her to bodily hazard and intolerable hardship, and renders cohabitation unsafe,—is extreme cruelty. And in order to amount to such cruelty it is not necessary that there should be many acts. Whenever force and violence, preceded by deliberate insult and abuse, have been once wantonly and without provocation used, the wife can hardly be considered as safe."

In *Day* v. *Day*, 56 N. H. 316, two assaults upon the wife by the husband (defendant) were proved, and those not of an aggravated nature. But it was in proof that the defendant used very violent language towards the plaintiff, cursing her at times, and applying indecent epithets to her, and conducted himself in such a way as to terrify his wife and children, and make the idea of living with him intolerable to them. Upon these facts a divorce was decreed. In *Harratt* v. *Harratt* the case does not show that the defendant inflicted actual violence upon the plaintiff, or used any force upon her, but it was proved that he had threatened her life at different times, had ceased to provide for her support, and had treated her harshly in sickness; and there was ground to apprehend that if she cohabited with him she might be subject to disease. A divorce was decreed. In *Poor* v. *Poor* and in *Day* v. *Day* personal violence accompanied the abusive and threatening language; and the question whether personal violence is necessary to constitute extreme cruelty was not considered. "Mental and moral sensibilities, unreasonably wounded, may be an actual cause of suffering, as plain as a broken limb." *McDuffee* v. *Railroad*, 52 N. H. 430, 452.

In *Bailey* v. *Bailey*, 97 Mass. 373, 380, a majority of the court decided that "where a divorce is sought on the ground of cruelty, whether it be cruel and abusive treatment, or cruelty in neglecting or refusing to provide suitable maintenance for the wife, a reasonable construction of the statute requires that it shall appear to be at least such cruelty as shall cause injury to life, limb, or health, or create danger of such injury, or reasonable apprehension of such danger, upon the parties continuing to live together. This is broad

enough," said *Chapman*, J., "to include mere words if they create a reasonable apprehension of personal violence, or tend to wound the feelings to such a degree as to affect the health of the party, or create a reasonable apprehension that it may be affected."

The tendency of the decisions until recently was, that language or conduct creating mental distress merely was not ground for divorce. The doctrine of *Harratt* v. *Harratt* and *Bailey* v. *Bailey* seems, however, to have been accepted on both sides of the Atlantic. *Butler* v. *Butler*, 1 Pars. Eq. Cas. 329, decides "that whatever form marital ill-treatment assumes, if a continuity of it involves the life or health of the wife, it is legal cruelty." The court say,—" To hold absolutely, that if a husband avoids positive or threatened personal violence the wife has no legal protection against any means short of those which he may resort to, and which may destroy her life or health, is to invite such a system of infliction by the indemnity given the wrong-doer. The more rational application of the doctrine of cruelty is to consider a course of marital unkindness with reference to the effect it must necessarily produce on the life or health of the wife; and if it has been such as to affect or injure either, to regard it as true legal cruelty."

In California it is held that suffering inflicted on the mind is a ground of divorce when its effects are produced on the body. Accordingly, in *Powelson* v. *Powelson*, 22 Cal. 358, a divorce was decreed, where it appeared "that the defendant was in the habit of using toward the plaintiff the vilest and most abusive language, falsely charging her with adulterous intercourse; that she was a weak, nervous woman, modest in deportment, and amiable in her disposition; that the conduct of the defendant caused her much mental suffering, producing fits of illness, and threatening permanent injury to her health, rendering a separation from him necessary." See, also, *Latham* v. *Latham*, 30 Grat. 307; *Cole* v. *Cole*, 23 Iowa 433; *Gholston* v. *Gholston*, 31 Ga. 625; *Briggs* v. *Briggs*, 20 Mich. 34; *McClung* v. *McClung*, 40 Mich. 493; *Palmer* v. *Palmer*, 45 Mich. 150; *Kelly* v. *Kelly*, L. R. 2 P. & D. 31; *Beyer* v. *Beyer*, 50 Wis. 254; *Carpenter* v. *Carpenter*, 30 Kans. 712; *McMahan* v. *McMahan*, 9 Or. 525; *Kelly* v. *Kelly*, 18 Nev. 49; *Jones* v. *Jones*, 60 Tex. 460.

Mr. Bishop (1 Mar. & Div., *s.* 730, *a.*, 6th ed.) claims that "not even apprehended injury to more than the mental part should be required; but accepting as sound the doctrine which demands more, still, equally to legal reason and to common understanding, it is as much an act against which the wife needs protection to pass the bane which will destroy the body through her mind as through her stomach." Again, in *s.* 733, he says "it is a reproach to the law . . . to say that it will permit a husband to ruin the health of his wife, or kill her in one particular way, but not in any other. If the body is the only thing to be

regarded in these cases, yet if we find various avenues to it, through any one of which may run the waters to drown its life or health, surely we cannot maintain that there is any principle of law whereby the approaches through one avenue shall be left open while the others are closed."

The cases of cruelty in the books are mostly where the husband was the guilty party. A variety of causes renders the infliction of cruelty by the wife on the husband less common than by the husband on the wife; but the same relief is given to a complaining husband as to a complaining wife.

We cannot say as matter of law that the defendant's conduct and abusive language to her husband did not permanently or seriously affect his health, or that there is not reasonable apprehension of such danger from the parties' continuing to live together. The effect of her conduct and language upon his health is a question of fact to be determined when the evidence shall be received and considered. It is possible that the sudden departure of his wife in the second week of their married life, the loss of his wearing apparel, the charge that he had committed the crime of bigamy, and the threat to pursue him to the prison walls, may have so shocked his mental sensibilities as to have permanently or seriously injured his bodily or mental health. On the other hand, it is not improbable that he survived the abrupt termination of his short married life, and the consequent destruction of his expectations of solace and comfort therefrom, without apparent or real injury to mind or body. If the libel is so amended as to set forth the mental or physical effects, which the plaintiff must prove, the question of fact will be tried at the trial term.

*Case discharged.*

CARPENTER, J., did not sit: the others concurred.