R. H. GOODMAN, Respondent, v. E. GOODMAN,
Appellant.

St. Louis Court of Appeals, May 2, 1899.

1. **Divorce**: INDIGNITIES: ACCUSATIONS: PUBLICATION. In the case at
bar the allegation of publication of the accusations made by defend-
ant is wholly unsupported by the evidence. It is equally clear from
the evidence that the defendant did not in malice nor wantonly
make the accusation charged but from a firm conviction that it was
true; her relations to him compelled her to disclose to him her con-
victions of his diseased condition. Held, that in so doing she com-
mitted no breach of her marital obligations and inflicted on him no
indignities.

2. ———: ———. In the case at bar the request of plaintiff that the
defendant should compel her brother to leave their home was an un-
reasonable one, and the refusal of the defendant to comply with it
was not an indignity.

*Appeal from the Audrain Circuit Court.*—HON.
ELLIOTT M. HUGHES, Judge.

REVERSED AND REMANDED (with directions).

D. A. BALL, JNO. W. MATSON & W. H. MORROW for
respondent.

The question is not whether this or that fact alone would
render it the duty of the court to decree a divorce, but whether
all the facts combined ought to lead to that result.   Saunders
v. Saunders, 1 Rob. Eccl. 549; Jones v. Jones, 60 Tex. 451;
May v. May, 62 Pa. St. 206.   Furthermore the evidence
shows that appellant, against respondent's objection, retained
in her employ a Mrs. Roberts, as nurse and companion, a
woman recently imported from a house of bad repute, and in-
stalled by Dr. Sombart in respondent's family.   Lewis v.

Goodman v. Goodman.

Lewis, 5 Mo. 278; Clinton v. Clinton, 60 Mo. App. 296; M'Cartin v. M'Cartin, 37 Mo. App. 471; Drayton v. Drayton, 54 N. J. Eq. 298; Holden v. Holden, 1 Hag. Con. 453; 9 Am. and Eng. Ency. of Law [2 Ed.], p. 790; Rodgers v. Rodgers, 17 S. W. Rep. (Ky.) 573. It is sufficient answer to point VI of appellant's brief that whatever, if any, evidence was introduced on the part of respondent as to his good character, was given without objection on the part of appellant. And further, that in divorce proceedings it is entirely proper for the court to be informed by evidence of the standing and character of the parties to the action. Floerse v. Bank, 10 Mo. 515. Besides such evidence is entirely harmless. Mulherin v. Simpson, 124 Mo. 610; Nelson v. Foster, 66 Mo. 391. It may be that some technical or harmless errors entered into the trial of this cause, but the judgment should not be disturbed for that reason. Ryder v. Roberts, 48 Mo. App. 132; Von Phul v. Hay, 122 Mo. 300. Any failure of averment of facts in the petition that the evidence shows to be undisputed, or that may be supplied by the evidence and cured by the verdict is not cause for reversing a judgment. McDermott v. Claas, 104 Mo. 14; Goins v. Railroad, 47 Mo. App. 173; State ex rel. v. Scott, 104 Mo. 26. An appellate court should not reverse a judgment unless it is able to point out errors in the record to the prejudice of appellant materially affecting the merits of the action. Ozark etc., Co. v. Hays, 105 Mo. 143. Appellant failed to establish by proof the material allegations in her cross-bill, and such proof as was offered was mostly by proven or self-confessedly disreputable witnesses, and further if any such indignities were satisfactorily proven they were occurrences which long antedated the disruption of marital relations and were prior thereto fully known to appellant and worked a condonation thereof. Moore v. Moore, 41 Mo. App. 176; Twyman v. Twyman, 27 Mo. 383.

PEARSON & PEARSON, JOHN COSGROVE and W. M. WIL-
LIAMS for appellant.

The mere fact that defendant told her husband that he
had syphilis, and had communicated it to her and their child,
would not, of itself, entitle him to a divorce. The trial court
erred in holding to the contrary. This accusation did not
necessarily imply that plaintiff had committed adultery, nor
violated his marriage vows. It is not alleged in the petition
that the wife charged her husband with having contracted
the disease after their marriage; the testimony is that she
stated that he became infected before that time. She made
no statement as to the manner in which he had acquired it.
Everything she said might have been true, and yet he may
not have been guilty of any wrong doing. McMahan v. Mc-
Mahan, 9 Ore. 525; 1 Nelson on Divorce and Separation,
161; Holthoeffer v. Holthoeffer, 47 Mich. 260. The peti-
tion does not allege, nor do the facts show, that the accusa-
tion was made by defendant wantonly or maliciously, or for
the purpose of wounding the feelings and sensibilities of plain-
tiff. To justify a divorce on the ground of false accusations,
the wrongful charge must be wanton or malicious. 9 Am.
and Eng. Ency. of Law [2 Ed.], p. 813, sec. 16; Wellman v.
Wellman, 23 So. Rep, 104; Ashton v. Grucker, 48 La. Ann.
1194; Loring v. Loring, 42 S. W. Rep. (Tex.) loc. cit. 644.
The petition not only fails to state that the charge was
made wantonly or maliciously, or that it was intended to im-
pute to plaintiff the crime of adultery, or some other miscon-
duct on his part, but it also fails to aver that the accusation
of the wife was without reasonable foundation. Going be-
yond the petition, the evidence discloses that she had reason-
able cause for her charge. If the accusations were made by
the wife in good faith, and especially if she had reasonable
grounds for believing them to be true, plaintiff is not entitled
to a divorce on account thereof. Kennedy v. Kennedy, 73

N. Y. 369; Harper v. Harper, 29 Mo. 303; Evans v. Evans, 48 N. W. Rep. 809.

BLAND, J.—The suit is for divorce brought by the husband against the wife. The gravemen of the charge is indignities offered by the wife to the husband; that these indignities were begun and kept up under the influence of John E. Sombart, brother of the wife. The specific allegations of indignities are as follows: "That the commencement of the aforesaid treatment and conduct of defendant toward the plaintiff rendering his condition intolerable consisted at first of inuendoes to the effect that plaintiff had been and was suffering with the vile disease of syphilis, then, insinuating that defendant had contracted said disease from him and that Louise Goodman was probably tainted with the same disease transmitted by heredity through the plaintiff, she being the child of plaintiff and defendant and now about twelve years old. That plaintiff knowing such insinuations and inuendoes to be without foundation in fact, and trusting to disabuse defendant's mind of these false impressions, if such impressions really existed therein, bore up under the same, hoping that upon proper reflection and under the transpiring events of time the falsity of such inuendoes and insinuations would become apparent to defendant, and that the tenor of their lives would flow on, as previously, in the channels of natural love and affection. That plaintiff left untried no means within his reach to effect this purpose and submitted even to unreasonable demands upon the part of defendant to accomplish this end; but that all his efforts in that behalf were ineffectual, and that the accusations aforesaid, first insinuated, as aforesaid, became more frequent and open until defendant, as also the said John E. Sombart still residing with the plaintiff as a member of his family at the instance of defendant, openly charged plaintiff to his face with being afflicted with syphilis and of having communicated the said disease to defendant, and of having transmitted the same by

heredity to their only child, Louise. And that defendant also, and her said brother, John E. Sombart, openly charged the plaintiff to his and their mutual friends and acquaintances and to strangers with having said disease, and of having communicated it to defendant, and of having transmitted it to his child, Louise. That even after this, plaintiff still hoping to avert the total domestic calamity thus threatened, and believing it might be possible to do so, if defendant was removed from the influence of said John E. Sombart, tried through his own and mutual friends to induce defendant to have the said John E. Sombart quit and leave their house and take up his abode elsewhere; that this the defendant refused to do and expressed a purpose to have him remain, although well knowing that his presence in her's and plaintiff's home caused by his course of conduct towards plaintiff as aforesaid was unbearably distasteful to plaintiff and such indignity as to render plaintiff's condition intolerable; rendering it impossible for plaintiff to remain longer under his own roof; when brought in contact with said John E. Sombart, who having come into plaintiff's home under the guise of friendship and relationship had, for sinister purposes as plaintiff believes and charges, by false accusations broken up and ruined the peace of plaintiff and his family, and by remaining therein at the instance and solicitation of defendant against the express protest of\plaintiff closed every possible avenue to a reconciliation between plaintiff and defendant."

The answer admitted the marriage, the birth of a child (Louise Goodman) still living, and that defendant refused to live with plaintiff as his wife, but denied generally all other allegations of the petition. The defendant filed a cross-bill, in which she prayed to be divorced from her husband, and alleged as a ground for relief that the plaintiff had offered her such indignities as to render her condition intolerable, in this, to wit: "That the plaintiff from and after the year

Goodman v. Goodman.

1890, and continuously to the time that he left the house in which he and the defendant had been living, as hereinafter stated, wholly neglected the defendant and their child and treated them with utter indifference; that he devoted no time to their society, and that he was only at their home long enough to procure his meals and at a late hour at night; that he never spoke to them with kindness, but was always cold, indifferent and morose in their presence; that he frequently during said time returned to his home at twelve or one o'clock at night intoxicated and in a drunken condition, after having spent the night in debauchery away from his family; that in the year 1890 the defendant was sick and in bad health, and the plaintiff objected to her consulting reputable physicians in the city of Louisiana, and refused to permit her to be treated by them, or to furnish her money for that purpose, although she needed medical attention and treatment and that she was compelled to call upon her father for the money for such medical treatment; that it became necessary in or about the month of September, 1890, for her to go to St. Luke's Hospital in the city of St. Louis, to have an operation performed upon her and that she desired her husband to go with her, but that he wholly neglected her and paid no attention to her request and refused to go on the ground that he could not lose the time, and yet immediately afterwards went away on a hunting expedition and was gone for a long time; that in the year 1894 the defendant being in bad health arranged for medical treatment, and that when plaintiff ascertained the fact he cursed her and said to her 'God damn you, I have a right to object;' that he frequently cursed the defendant and said 'God damn you' to her and applied other profane language to the defendant; that the defendant received some money from her father and gave it to the plaintiff for investment for her in the sum of $20,000, which he has lost and converted to his own use and purpose; that the defendant made inquiry about the

investments, and that at various times in the year 18— when she asked him in regard to her money matters and for a statement, he cursed her and said to her 'God damn you, you have no confidence in me;' that in the fall of 1895, the plaintiff exhibited to the defendant indications upon his body of a loathsome private disease and told the defendant that he had contracted it from her; that said statement was absolutely untrue and known by the plaintiff to be untrue at the time, and that thereafter the defendant declined to occupy the same room, or to live with plaintiff as his wife, but that they continued to reside in the same house and on account of their child, the defendant attempted to avoid any publicity of said matter and continued to live in the same house with the plaintiff; that during all the time of the marriage between the plaintiff and the defendant, plaintiff claimed to have some disease of the blood or skin and was constantly using blood purifiers and other remedies of that character; and finally made the accusation against the defendant in the fall of 1895, as stated above; that their child, Louise, now about twelve years of age, was in bad health and that the defendant in October, 1896, after having her said daughter examined by a physician, remonstrated with the plaintiff for his failure to have her properly treated, and that the plaintiff cursed the defendant and said to her, 'God damn you, don't you mention that to me again,' and upon another occasion when they were talking about the condition of health of said daughter, plaintiff said to defendant, 'God damn you and your family, if you open your mouth again about this I will ruin you and your whole damn family and shut your mouth forever;' that in or about the month of March, 1896, the plaintiff said to the defendant when she remonstrated with him in regard to his conduct towards and treatment of her, and when she asked him in regard to her money matters; 'God damn you, you can go to hell with your money;' that in or about the same month the plaintiff said to her, 'You are a damn fool to allow your brother to

handle your money,' and that about the same time and after her brother had been to the city of Louisiana, defendant told the plaintiff that her said brother had offered her certain money belonging to her and which he held in trust for her and plaintiff thereupon called the defendant a 'damn fool' and scolded her for not taking it; that in June, 1897, the plaintiff left the house and since that time they have not lived in the same dwelling house.

"The defendant further says that the plaintiff has failed for five years or more to support or maintain the defendant and his said child, and that he has used defendant's money and insisted upon her calling upon her father for more money and upon her refusal to do so has cursed her and called her a 'damn fool' at various times."

The suit was begun in the court of common pleas at Louisiana, Missouri, and taken by change of venue to the circuit court of Audrain county, where on trial a decree of divorce was awarded the plaintiff, from which the defendant appealed. The sufficiency of the petition is questioned. It is not charged in the petition that the defendant wantonly nor maliciously accused the plaintiff of being diseased of syphilis, nor that she made the accusation knowing it to be false, nor that she did not make it honestly believing it to be true. No statement of the time nor place, when or where the plaintiff contracted the disease, nor the circumstances under which he contracted it, is alleged in the petition, and for these reasons the accusation does not impliedly charge that plaintiff had been guilty of adultery. Everything she said might be true, and yet the plaintiff would not be guilty of any wrong doing. The disease, if it existed, may have been contracted before marriage; it might have been contracted accidentally; it might be hereditary. McMahan v. McMahan, 9 Ore. 525; Hoethoeffer v. Hoethoeffer, 47 Mich. 260. Such indignities as will authorize the granting of a divorce, must amount to a species of cruelty, not to the body, but to the

mind.   Lewis v. Lewis, 5 Mo. 278; Hooper v. Hooper, 19 Mo. 355; Kempf v. Kempf, 34 Mo. 212; Haley v. Haley, 44 Ark. 429, and has been defined to be "unmerited, contemptuous conduct towards another; any action towards another which manifests contempt for him; contumely, incivility, or injury accompanied with insult."   Coble v. Coble, 2 Jones Eq. (N. C.) 392.   A malicious charge of adultery may be an indignity.   Lewis v. Lewis, *supra*, Loring v. Loring, 42 S. W. Rep. loc. cit. 644.   In Hooper v. Hooper, *supra*, the supreme court said:   "It is impossible, under the statute, to specify particular acts as the indignities for which divorces may, in all cases be granted; for it is not possible to state the effect of such acts, in redering the condition of all persons injured intolerable,   *  *  *   and that each case must be determined according to its own peculiar circumstances."   It was also held in that case that a letter written by the husband to the wife, was a wanton act of cruelty, but as it was confined to her and not published to the world, it was not such an indignity under the statute as would authorize the court to grant a divorce to the wife.

Passing the question of the sufficiency of the petition in this case and taking up the evidence, it appears that the defendant did accuse the plaintiff of having syphilis, and that he had communicated it to her, and that their child inherited the disease from him; but there is no evidence whatever that she published the accusation against him prior to the commencement of the suit, except at the time she first directly and openly accused him of having the disease, when in a conversation with him, she made the accusation in the presence of Dr. Sombart, her brother, who was at the time treating both her and the child for the disease; nor did she after the commencement of the suit publish the charge, except when and where it became necessary in her defense of the suit.   On the contrary she was extremely reticent on the subject and did all in her power to conceal the publicity of

the charge, which she regarded as a disgrace to herself and child, and which she wished to conceal as much as possible from the public. The allegation of publication is wholly unsupported by the evidence. It is equally clear from the evidence that the defendant did not in malice nor wantonly make the accusation, but from a firm conviction that it was true; nor was her conviction of the truth of the accusation without strong evidence of support. While the learned trial judge found that the plaintiff did not have the disease, and the bare preponderance of the evidence is perhaps that way there is very strong evidence to the contrary, and the evidence does not establish to a certainty that he did not have the disease. But deferring to the finding of the trial judge, that he did not have it, and treating the truth of the accusation as eliminated from the case, does it place the defendant in any worse position because the accusation was not true? We think not. The disease is one against the contagion of which any wife has a right to defend herself even as against her husband, as much so as to defend her person against a murderous assault made upon her by him, and she has as much right to act upon reasonable apprehension of danger in the one case as in the other. The defendant could not withhold from the plaintiff her belief that he had syphilis, and at the same time refuse, on that account, to cohabit with him, without being guilty of an indignity toward him; her relations to him compelled her in justice to herself and to him, to disclose to him her convictions of his diseased condition, and in doing this she committed no breach of her marital obligations and inflicted on him no indignities. The proof is that the plaintiff requested defendant to have Dr. Sombart leave their residence, where he was then staying, because his presence was distasteful to plaintiff, and that plaintiff told defendant that if Sombart did not go, he (plaintiff) would have to do so, and that defendant replied she would stay with her father and

INDIGNITIES.

brother and that plaintiff could go, and that he did go.    This act on the part of defendant standing alone and without explanation would constitute an indignity of a serious character, but every fact must be judged by the facts and circumstances connected with and explanatory thereof.    A short time before this request was made of defendant she had taken her child to St. Louis to a specialist, Dr. C. R. Lightner, for examination and treatment.    Dr. Lightner informed her that the child had lost the sight of an eye from choroiditis, a disease of the eye which, according to the  testimony, is produced in most cases by syphilis.    On her return home she was for the first time, although she had herself long suspected it, informed by Dr. Sombart that she and her child had syphilis and that her husband had it.    At the time of her marriage she was a strong, healthy girl and descended from a strong, long lived ancestry.    Her child shortly after its birth had skin eruption, was sickly and delicate, and continued to have skin eruptions. She also soon after the birth of her child had skin eruptions, and was thin in flesh, weak, and suffered from intense headaches.    Her husband had skin eruptions before he was married, continued afterwards to have them.    He took blood purifiers and a prescription that is usually given in syphilis cases.    Dr. Sombart, after informing defendant of what he thought ailed her and her child, took their cases in hand and was treating both for constitutional syphilis, and the evidence is that they were improving under his treatment, and continued to improve to the day of the trial.    The evidence also is, on the part of plaintiff, that for more than six months prior to his request (that Dr. Sombart should leave the house), he and defendant had not lived together as man and wife.    According to defendant's testimony they had not so lived for over a year.    There had been no personal difficulty between Dr. Sombart and plaintiff, no manifestation of ill feeling, their relations, up to the hour of the request, had been friendly.    The request, under these circumstances, was

an unreasonable one, and the refusal of the defendant to comply with it was not an indignity. She did what a prudent person in her situation would do—held on to the physician whose treatment was building the wasted bodies of herself and child,—and as she believed, eliminating from them a loathsome disease. The six hundred pages of printed evidence in this case has failed to show a ray of testimony to establish any indignity offered by defendant to the plaintiff. On the other hand there is much in the record to prove that the plaintiff was guilty of every indignity set up in the cross-bill. The defendant was a religious woman and church-goer. He brought and kept liquors in his house—he had card parties in his house at which liquors were served; he stayed out at nights, came in, as the preponderance of the evidence shows late at night, and often intoxicated; he neglected his wife and child in sickness, and when his wife was suffering from most intense headache he taunted her with an alleged tendency of people of her nationality (German) to commit suicide. He left her on one occasion, when she was sick, and their child dangerously so, and went away on a hunting expedition giving his wife directions where to reach him by telegram should the child die. When questioned by his wife about the eruptions on his body and on her's and that of the child, he told her that she inherited it from her mother and had communicated it to him and the child, when in fact he had the eruptions, which he and some of the physicians said was eczema, before he married the defendant. On several occasions, without provocation, he cursed his wife in a brutal manner and called her a fool. The defendant, according to the evidence, is a well educated lady of delicate and refined sensibilities; her conduct in the ordeal of sickness and distress of mind through which she has been compelled to pass, shows that she is a very discreet woman and very careful of the good name and fame of her family. Her treatment by her husband was such as to alienate her affections from him. Neg-

lect by a husband of his wife in sickness, to a delicately constituted woman, is more severe and cruel than physical blows. To a refined christian woman to be cursed and called a fool, without provocation, is not only an outrage to her sensibilities but enough to arouse her fears of personal violence at the hands of her husband. For a wife to be convinced that her husband had a loathsome and deadly disease, of which he knew, but kept a secret, when he married her, and which he afterwards communicated to her and her child by him, is to abandon hope and pray for death to both mother and child, as the evidence disclosed the defendant has often done. In our opinion the allegations of indignities set out in the cross-bill are well supported by the evidence, and that the defendant is entitled to the relief for which she prays, and that she should have the sole care, custody and control of the infant child Louise. Wherefore the judgment is reversed, with directions to the trial court to enter a decree of divorce for defendant and to give her the custody of the child.

Judge Bond concurs; Judge Biggs not sitting, having declined to take any part in the decision of the cause.