BERTHA ULREY, Appellant, v. HARRY ULREY, Respondent.

St. Louis Court of Appeals, April 18, 1899.

Divorce: DESERTION: PRACTICE, TRIAL. The desertion being for the statutory period, willful and without legal excuse or consent the plaintiff, upon proof of her good conduct and that she was an injured and innocent party, was entitled to a divorce on the day following the expiration of the time prescribed by statute.

*Appeal from the St. Louis City Circuit Court.*—HON. SELDEN P. SPENCER, Judge.

REVERSED AND DECREE OF DIVORCE GRANTED.

No points and authorities filed.

BOND, J.—This is an action by the wife for divorce on the ground of desertion. Upon the default of the defendant an inquiry was had and the petition dismissed. Plaintiff appealed.

The evidence shows that the parties were married on the seventeenth of February, 1897, the plaintiff being a widow with four children and the defendant a widower with two children. After the marriage the wife went to live with the husband. They resided together about three months, when the husband abandoned his home on the eleventh of May, 1897. The separation is thus described in the testimony of plaintiff, to wit: "Q. Now state to the court how

Ulrey v. Ulrey.

he came to leave you? A. He just came home one evening and he walked into the room, and I came in, and he asked me what I intended to do, and I said to him (I did not understand him) that I intended to do what was right. He said he could not support us if I would not help; that I should buy my own clothes and my children's clothes, otherwise he could not support us. I told him that I could not do that, that I was working as hard as I could, and at which he picked up and left. Q. Did you have any property from your husband, Mr. Naes? A. Yes, sir. Q. Real estate? A. Yes, sir. Q. Was that bringing in any income? A. Yes, sir; rent. Q. While you were living with Mr. Ulrey what did he do toward supporting you? A. He worked at the carriage making trade. Q. Did he support you, did he give you any money? A. Some, but not enough to do. I had roomers. We had been living in flats at $18 a month and he did not pay the balance but that I had to pay. Q. Did you keep roomers all the time you were living with him? A. Yes, sir. Q. What did he say that you should do? A. That I would give up my rent that I made from the property that was left by Mr. Naes. Q. You told him that you could not do that? A. Yes, sir. Q. Then he left you at that? A. He just picked up and left. Q. Has he since returned to you? A. I have not seen him since. Q. He has since stayed away continuously? A. I have never seen him since during that time."

TESTIMONY.

The court: "Q. He took his children? A. Yes, sir."

W. Frederickson also testified that he was an eye witness to the above transaction and heard defendant say when leaving that he "could not provide for the family." The "good conduct" of the plaintiff was proven by three witnesses. Upon the dismissal of the suit the learned circuit judge filed the following memorandum: "The evidence and circumstances of this case satisfied me that the

plaintiff, a widow with four children and some property at the time of her marriage with defendant, and the defendant a widower with two children and a good trade at the time of his marriage with plaintiff found out after an experience of less than three months that the financial arrangements of their establishment could not be carried on in a manner satisfactory to both and so the defendant with his children went away to another house in this city, and the plaintiff with her children remained at home.    Within seven days after the end of a year from the separation the plaintiff promptly filed her petition for divorce.    I am not satisfied that the plaintiff is either an injured or an innocent party and under section 4508, Revised Statutes 1889, must dismiss the bill." The section of the statute cited in support of the views of the learned trial judge provides as follows:   "In all cases where the proceeding shall be *ex parte*, the court shall before it grants the divorce require proof of the good conduct of the petitioner and be satisfied that he or she is an innocent and injured party."    All that is meant by this provision is, that in addition to proof of one of the statutory grounds of divorce, it is incumbent on the plaintiff (where the defendant does not appear) to furnish evidence of his or her good conduct, and that he or she is an innocent and injured party, which if applied to any other facts, would create belief in reasonable minds.    It was not intended by the statute that evidence of greater probative force should be required as to these facts than is sufficient to establish any other facts which the law submits to the triers of such issues.    If, therefore, the evidence in the case at bar measured by the standard of the law was sufficient to engender conviction in the mind of a tribunal constituted for the trial of questions of fact, the court could not have refused to credit it without prejudice to plaintiff's rights.    The evidence in question was clear, full, frank, uncontradicted, and out of the mouths of three unimpeached witnesses.    The trial court conceded that

it established the full term of desertion prescribed by statute for a divorce, but was "not satisfied" therefrom that plaintiff was an injured or innocent party. Why the court disbelieved the clear and concurrent testimony of all the witnesses showing the good conduct of plaintiff and that the desertion of her bed and board by her husband was solely for her refusal to give him $15 per month which she received for the rent of property left her by her former husband, we are at a loss to understand from anything appearing in the testimony in the record. The court could not have been so influenced by its finding "that the financial arrangements of their establishment were not satisfactory to both," for the proof is that this happened without any possible imputation of fault to plaintiff, as neither law nor justice required her to surrender the income of her own property to her husband as the price of the performance by him of his marital obligations. Hence his consequent desertion was wholly without fault on her part. Neither can it be that the learned trial judge refused to give his credence to the testimony adduced for plaintiff because she sued within seven days (as stated in his memorandum) after the accrual of her right to a divorce. The desertion being for the statutory period, willful, and without legal excuse or consent, the plaintiff upon proof of her good conduct and that she was an innocent and injured party was entitled to a divorce *ex debito justitiae* on the day following the expiration of the time prescribed by statute, and it was as much the duty of the court to have rendered a decree in her favor upon proof of the foregoing facts, as it would have been its duty to enter up a judgment for the amount of an unpaid promissory note in an action thereon. Deschodt v. Deschodt, 59 Mo. App. 102. Marriage is a status created, fostered and controlled by law because it is necessary to the welfare, if not to the very life, of society, and being a matter of supreme public interest the causes for the dissolution of the contract are defined by statute. Whether the policy of

the state as evidenced by its enactments on the subject of divorce is wise or unwise, is a question for the legislature. It is the duty of the trial courts to enforce these statutes, not to repeal them, the latter being the exclusive prerogative of the lawmaking body. The judgment of the trial court in this cause is reversed and a decree of divorce for plaintiff will be entered in this court. All concur.