WALD, Respondent, v. WALD, Appellant.

St. Louis Court of Appeals, April 24, 1906.

1. DIVORCE: Finding of Trial Judge: Weight of Evidence. The appellate court will defer to the finding of the trial court, who saw and heard the witnesses, in a divorce case, where there was ample evidence to support the finding.

2. ———: Indignities. In this case the evidence is examined and held sufficient to warrant a decree for divorce on the ground of indignities such as to render the plaintiff's life intolerable.

3. ———: Evidence: Communication between Husband and Wife. Where on the trial of a suit for divorce the wife, plaintiff, testified to communications between herself and husband, where it did not affirmatively appear that a third person was present, but the evidence was received without objection and it appeared that the trial court sustained an objection to evidence of that character, it will be presumed that in weighing the evidence, the trial court did not take into consideration the incompetent evidence.

4. ———: Public Policy: Statutory Grounds. The public policy which opposes the granting of divorces had its origin in the ecclesiastical courts of England and has been modified by statutes enumerating specific grounds upon which courts may grant divorces; a party to a suit for divorce is as much entitled to a decree if he or she establishes the statutory ground alleged by clear and convincing proof as he or she would be to a judgment in any other civil suit.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*Valle Reyburn* for appellant.

*Warren Hilton* for respondent.

(1)   The indignities complained of by respondent consisted of unmerited contemptuous treatment; acts and language toward her which manifested contempt for her; contumely, incivility and insult, in the presence of their daughter and others, amounting to a species of cruelty to the mind; as such they entitle her to a divorce. Griesedieck v. Griesedieck, 56 Mo. App. 94; Tripp v. Tripp, 78 Mo. App. 413; Goodman v. Goodman, 80 Mo. App. 286; Lynch v. Lynch, 87 Mo. App. 36; Endsley v. Endsley, 89 Mo. App. 597; 9 Am. and Eng. Ency. of Law pp. 812-813.   (2)   Rudeness, vulgarity, unmerited reproach, haughtiness, contempt, contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every plain manifestation of settled hate, alienation and estrangement are adequate indignities.   1 Bishop on Marriage and Divorce, sec. 1827; Brown on Divorce (1890), p. 208; Stewart on Marriage and Divorce, sec. 282.

BLAND, P. J.—The suit is for a divorce, care and custody of a minor child and for alimony.   Omitting caption, the petition is as follows:

"Plaintiff states that on the twenty-second day of April, 1896, in the State of Missouri, she was lawfully married to the defendant, and that she continued to live with him as his wife from and after said date until on or about the twenty-second day of January, 1904; that during all that time plaintiff demeaned herself toward the defendant with kindness and affection and discharged all her duties as his wife.

"And for a cause of action plaintiff says that since the time of the said marriage and during the cohabitation of plaintiff and defendant as husband and wife, said defendant has offered to plaintiff such indignities as to render her condition as his wife intolerable, said indignities being in part as follows, to-wit:

"1. That almost from the time of their said marriage the defendant has exhibited a most violent temper, causing him without the slightest excuse to manifest toward plaintiff the most furious wrath and hatred; that on innumerable such occasions and in the presence of their little child Lucille now six years old the defendant has raved and cursed at plaintiff, telling her 'go to hell and be damned' and calling her 'terror,' 'devil,' prostitute' and by countless other vile and abusive epithets; that in the presence of their said child and of other persons defendant has said to plaintiff that she was 'a very ignorant woman' was 'mentally, morally and physically dwarfed,' was 'lewd and low in her thoughts and actions' and applied to her numerous other similar expressions.

"2. That during all the time that plaintiff lived with defendant, he continually nagged at her and quarrelled with her and pursued her with petty and contemptible accusation, so that her home life became wretchedly unhappy and finally unendurable.

"3. That while plaintiff and defendant lived together defendant on several occasions refused to speak to plaintiff for long periods of time, even as long as six or seven weeks, telling plaintiff that she was only his servant and that he did not intend to speak to her or treat her as more than a servant.

"4. That defendant has scarcely ever taken plaintiff anywhere for several years and has insisted upon her remaining at home at all times, denying her all recreations and putting her off from all social intercourse with her friends; that when any of plaintiff's friends would call upon her, he would treat them with such in-

sulting discourtesy that plaintiff would suffer most intense humiliation and mortification; that on one occasion, so unusual that it is clear in plaintiff's memory, defendant permitted plaintiff to attend a concert with her married sister, expecting her to return home about ten o'clock p. m., but when plaintiff did not arrive at that hour defendant called in neighbors to care for their said child Lucille while he went out to hunt for plaintiff and when plaintiff reached home about 10:45 p. m., defendant cursed and raved at her and told her 'he would make her stay at home after that if he had to lock her in.'

"5.    That since the time of their said marriage, plaintiff has several times been seriously ill so as to require the services of a physician; that at such times the defendant has not only failed to display the least solicitude for her recovery but has continually quarrelled with her and railed at her, declaring that she was shamming illness and running up doctor's bills unnecessarily and that he would not pay such bills when presented and that he would not again permit a physician to be summoned and insisting that she could get up from her sickbed and scrub the floors and do other heavy work about the house; that on certain occasions of this kind the defendant's conduct toward her was of so outrageous and brutal a character as to endanger her life.

"6.    That the defendant has frequently declared to plaintiff and to other persons that he had not the slightest affection or regard for plaintiff and that he wished he were rid of her.

"7.    That defendant has on numerous occasions ordered plaintiff to leave him and threatened to 'kick her out of the house bodily' if she did not do so; and that these threats have been expressed in coarse and brutal language and uttered in the presence of their said child, Lucille.

"8.    That although defendant has property of the

value of more than five thousand dollars and a monthly income of over one hundred dollars, he has allowed plaintiff but thirty-five dollars per month out of which to provide food for their table, clothing for herself and child and pay all other expenses incident to their housekeeping, except rent and fuel; and that in spite of his niggardly provision for her, defendant continually accused plaintiff of bleeding him for his money, and continuing to live with him only for the money that she could get from him, when as a matter of fact plaintiff bore the indignities offered her by defendant only because of her consideration and love for her child.

"Plaintiff states that there was born of the marriage aforesaid but one child the aforesaid Lucille, a girl now about six years of age.

"Plaintiff further states that she is now a resident of this State and of the city of St. Louis and has resided within this State one whole year next before the filing of this petition.

"Plaintiff further states that defendant is seized and possessed of real estate of the value of $5,000 and personal estate of the value of $2,000; and that she is wholly without the means of support, and for the prosecution of this suit.

"Wherefore plaintiff prays to be divorced from the bonds of matrimony contracted as aforesaid with defendant; that she may have the custody and care of her said infant child and that the court will adjudge to her out of the property of said defendant such support and maintenance, and for such time, as the nature of the case and circumstances of the parties may require; and that, if necessary, defendant may be compelled to give security for such maintenance; and that the court will make such further orders and judgments from time to time, touching the premises, as to the court shall seem meet and just."

The answer was a general denial.

The decree was for plaintiff, granting her a divorce and awarding her the care and custody of the minor child, Lucille, and a judgment for alimony at thirty dollars per month. Defendant appealed.

The evidence of the plaintiff tends to prove each of the seven specifications of indignities alleged in her petition, that especially during the last twelve months plaintiff lived with her husband his conduct was most vexing and provoking, that he was fault-finding and quarrelsome, scolded her when she was sick, constantly nagged at her, ordered her about as though she was a hireling, exacting of her unremitting toil and menial service, practically cutting her off from the amenities of social life by refusing to escort her to entertainments or places of amusement, by insulting her friends and neighbors when they called to visit her, by shutting the door in their faces or, if in, by sulking in a corner, or refusing to see them at all. His conduct, according to plaintiff's evidence, was such as to make the life of any woman possessing ordinary sensibilities intolerable. Plaintiff testified that defendant was so violent and ill-tempered that she became alarmed and left him for fear he would do her some personal violence. Plaintiff's evidence tending to prove the indignities charged was corroborated by her mother, sister and brother-in-law, by J. A. Mateer, F. L. Bartlett and wife and Dr. L. M. Camp. Her evidence, in which she was also corroborated, tends to show that at all times she treated her husband with kindness and affection, and faithfully discharged all her duties as his wife.

The defendant testified in his own behalf. He emphatically denied all the indignities specified in the petition, but admitted that at one time he said to his wife that she was "a mental and moral dwarf," but said he was provoked to make this remark by his wife insinuating that he had visited an immoral resort the previous night. Be it said to his credit, defendant testified to

nothing against his wife, professed to love her very sincerely and expressed a desire to live with her. Defendant also testified, and in this he was corroborated by other witnesses, that while he was not fond of society himself, he did not object to his wife entertaining her friends or attending places of amusement, and during the heated terms of two seasons, by his permission, she was entertained for two or more weeks at a time by his brother-in-law at Arcadia, Missouri.

The trial court, after hearing the evidence held the case under advisement for some time and evidently carefully considered and weighed all the evidence before rendering its judgment. We have carefully read the testimony of all the witnesses, as preserved in the bill of exceptions, and have no hesitancy in saying that the evidence preponderated in favor of the plaintiff. In these circumstances, an appellate court should defer to the finding of the trial court, who saw and heard the witnesses and was therefore in a much better position to judge of their credibility than is an appellate court who his neither seen nor heard the witnesses and must form its conclusions on the testimony as it appears in print. [Penningroth v. Penningroth, 72 Mo. App. l. c. 333; Griesedieck v. Griesedieck, 56 Mo. App. 94.] That the indignities alleged in the petition and established by plaintiff's evidence were sufficient under the statute to warrant a decree of divorce, we do not think admits of a doubt. [Lynch v. Lynch, 87 Mo. App. 32; Goodman v. Goodman, 80 Mo. App. 274.]

Error is assigned in the admission of evidence for plaintiff over the objection of the defendant. The objection was made that plaintiff was incompetent to testify to any communications between herself and husband, unless some third person was present. The court sustained the objection. But in a few instances in the course of plaintiff's examination, she testified to the conduct of her husband (such as threatening to kick her

out of the house, and to opprobrious epithets he applied to her) when it was not shown affirmatively a third person was present. This evidence went in without objection at the time it was offered, nor was a motion made to strike it out after it was in, therefore, defendant is in no position to complain of it on this appeal; and besides, as the court ruled that plaintiff was incompetent to testify to confidential communications between herself and husband, it is to be presumed that in weighing the evidence, the court did not take into consideration incompetent evidence, if any was admitted. Especially, should this presumption be indulged in a case like this, where the competent evidence on the issues of fact preponderates in favor of the plaintiff.

As opposed to the decree, counsel for defendant ably and earnestly urges upon our consideration the fact that the public policy of the state is opposed to the granting of divorces. This policy had its origin in the ecclesiastical courts of England and was founded upon the idea that marriage is a religious sacrament and therefore sacred in the eyes of God and man. We have separated our civil government from the church, but we have not separated ourselves from the public policy that opposes the granting of divorces. We adhere to it for the reason marriage is the cornerstone of civilized society. Some of the rigors of that policy, as established by the ecclesiastical courts, have been ameliorated by legislative enactment. Our Legislature has specifically enumerated the grounds upon which the courts may grant divorces and has thus declared what the policy of the state is in respect to the grounds for a divorce. This phase of the policy opposing the granting of divorces, to-wit, what shall be grounds for a divorce, is therefore no longer a subject of judicial interpretation with us; and a party to a suit asking for a divorce is as much entitled to his or her decree, if he or she establishes the statutory ground relied on by clear and convincing proof

as he or she would be to recover in any other civil suit, on evidence clearly establishing his or her demand. [Ulrey v. Ulrey, 80 Mo. 48; Kilpatrick v. Kilpatrick, Ib. 70; Lynch v. Lynch, supra.] Plaintiff alleged one of the statutory grounds in her petition (such indignities as to render her condition in life intolerable) and we think satisfactorily proved her case by competent evidence.

The judgment is therefore affirmed. All concur.