## GARDNER v. GARDNER.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.
    In husband's suit for divorce, evidence *held*, sufficient to
    support the finding of the court below that defendant
    was guilty of extreme cruelty.

2. SAME—INSANE SPOUSE CANNOT BE GUILTY OF ACTS CONSTITUT-
   ING GROUND FOR DIVORCE.
    A spouse who is insane cannot be guilty of conduct that
    will constitute cause for divorce, for the reason that he
    or she is incapable of intentionally doing or committing
    an act that will constitute ground for divorce.

3. SAME—ACTS PRECEDING INSANITY MAY BE CAUSE FOR DIVORCE.
    While a divorce will not be granted for acts committed
    during insanity, a divorce may be obtained for acts
    happening prior thereto, notwithstanding the subsequent
    insanity.

4. SAME—WIFE NOT MENTALLY AFFLICTED AT TIME ACTS RELIED ON
   COMMITTED.
    In husband's suit for divorce, evidence *held*, to show
    that, in committing the acts of cruelty complained of,
    defendant was not influenced by the mental malady with
    which she was later afflicted.

5. SAME—CUSTODY OF CHILD PROPERLY AWARDED TO FATHER WHERE
   MOTHER MENTALLY DERANGED.
    Where the wife, at the time a decree of divorce was
    granted to the husband, was mentally deranged and con-
    fined in a State hospital, the court below properly awarded
    the custody of a minor son to the father, with provision
    that he be taken to see his mother at stated intervals
    until conditions change requiring modification of the de-
    cree in this respect.

6. SAME—ALIMONY—MODIFICATION OF AMOUNT.
    The allowance of $25 a month for alimony, *held*, under
    the circumstances, insufficient and increased to $50, which
    includes expenses of defendant's maintenance at the State

---

[1]Divorce, 19 C. J. § 367; [2]Id., 19 C. J. § 170; [3]Id., 19 C. J. §
170; 34 L. R. A. 165; 9 R. C. L. 334; [4]Id., 19 C. J. § 170; [5]Id.,
19 C. J. § 798 (Anno); [6]Id., 19 C. J. § 614.

hospital. STEERE, WIEST, and CLARK, JJ., concurring, but holding that alimony should be $40 per month.

7. SAME—COSTS—ATTORNEY'S FEE.
   Because of modification of decree in regard to allowance of alimony, plaintiff is required to pay to the defendant an attorney fee of $100, but neither party is awarded costs.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted April 21, 1927.     (Docket No. 163.)     Decided June 6, 1927.

Bill by Isaac G. Gardner against Ida I. Gardner, by Winnifred I. Smith, guardian *ad litem,* for a divorce. From a decree for plaintiff, defendant appeals. Modified and affirmed.

*Hayden, Ballard & Hubbard* (*L. B. Gardner,* of counsel), for plaintiff.

*Jackson, Fitzgerald & Dalm* (*Joseph W. Planck,* of counsel), for defendant.

McDONALD, J.     This is an appeal from a decree of the Ingham circuit court in which the plaintiff was granted an absolute divorce from the defendant. The parties were married March 13, 1920. Following their marriage, they lived in Seattle and Bremerton, Washington, until October, 1921, when they moved to Kalamazoo, Michigan. They stayed at the home of the defendant's parents in Kalamazoo for awhile, and then moved to Lansing, where they lived with the plaintiff's father until September, 1923. Later they purchased a home on Hillsdale street, in Lansing, where they lived until their separation about April 7, 1926. They have one child, Leonard, still living, born on the 9th of April, 1923. The bill alleges that the defendant was guilty of extreme cruelty, in that

'Divorce, 19 C. J. § 768 (Anno).

she constantly accused the plaintiff of flirting and consorting with other women; that she had a violent temper, and on many occasions attacked the plaintiff, scratched his face, threw dishes at him, and once hit him with a stove poker, and at another time with a shovel.   It is alleged that this conduct on the part of the defendant continued until further marital relations with her became unbearable.

The defendant filed an answer in which she denied the allegations of cruelty recited in the bill, and asked to have it dismissed.   The bill was filed on April 10, 1926.   The answer was filed on May 4, 1926.   Before the cause was heard, and on October 13, 1926, the defendant was adjudged insane and committed to the Kalamazoo State Hospital, whereupon Winnifred Smith, a sister of the defendant, was appointed guardian *at litem*, and filed a supplemental answer. On the hearing, the circuit judge found that the allegations of cruelty were established by the evidence, and entered a decree for the plaintiff.   The defendant has appealed.

We think there was sufficient evidence to support the finding of the court that the defendant was guilty of extreme cruelty, as alleged by the plaintiff.   Neither of the parties were witnesses.   The defendant because of her mental disability was unable to testify, and the plaintiff was prohibited by the statute from doing so as to all matters equally within her knowledge.   But there was other undisputed evidence which satisfactorily established the charges of cruelty.   The only question which requires consideration is whether the defendant was insane at the time she committed these acts of cruelty.

"The broad rule has been laid down that a spouse who is insane cannot be guilty of conduct that will constitute a cause for divorce in favor of the other, for the reason that he or she is incapable of intention-

ally doing or committing an act that will constitute a ground for divorce." 9 R. C. L. p. 324, § 99.

"While a divorce will not be granted for acts committed during insanity, a divorce may be obtained for acts happening prior thereto notwithstanding the subsequent insanity." 2 Schouler, Marriage & Divorce (6th Ed.), p. 1880, § 1679.

"Mental irresponsibility, however, is not available as a defense to cruelty if the defendant was capable of fully comprehending and understanding the wrongs he was committing." 9 R. C. L. p. 334, § 113.

In the case before us, the defendant first manifested symptoms of insanity in August, 1925. At that time she came under observation and treatment of Doctor McNair of Kalamazoo. He testified that she was then insane, that the form of her insanity was *dementia precox,* a progressive type of insanity manifesting itself chiefly in delusions. Dr. Yoder of the Kalamazoo State Hospital testified to her mental condition at the time of the hearing. He said that she was insane, that the form of her insanity was *dementia precox,* a progressive mental disease, probably incurable. The medical testimony leaves no doubt that she is afflicted with *dementia precox,* and that she has been so afflicted since August, 1925. It is a progressive disease, sometimes progressing slowly, and in some cases rapidly. When it began with this defendant is a pure matter of speculation so far as medical science can determine. With one exception, the doctors did not undertake to say. So we must look elsewhere for information as to her mental condition during the years when the acts of cruelty to her husband were committed. The acts complained of began before the parties came to Michigan in October, 1921. In a letter to the plaintiff's father at Lansing, the defendant comments on her domestic difficulties, and says that the conditions were the same when they lived in Bremerton, Washington. We quote a portion of this

letter, which was written on the 13th of December, 1921:

"Ike and I will never get along.    He insists on speaking to women he doesn't know when he meets them.    He does this on the streets, in department stores, on the road, when he drives the machine or anywhere.    He absolutely refuses to quit it.    If I should flirt, he would think that was terrible, but his doing it is a different matter.    I am tired of living with a man who makes himself 'common' with every woman he meets.    If I say anything to Ike when he flirts he denies it, says I am seeing things and am a fool, then walks on and flirts with the next woman he meets.

"His familiarity with other women and his abuse of me have almost separated us several times. My people say that if I accept such treatment now that I am back in Michigan it is my own fault as no Fullerton is obliged to.

"If I came to Lansing and Ike continued being so free with women and continues humiliating me I would never remain.    I've had my hell.    It is time I enjoyed a little peace.    Then I would have no position that would be worth while.    Is that fair to me?

"I offer Ike his freedom if he wishes it.    Then he can do as he pleases as regards other women, but he cannot live with me and continue as he has been doing in the past.

                    "Sincerely,

                              "IDA."

At the time she wrote this letter she was teaching school in the city schools of Kalamazoo.    The plaintiff was working in Lansing.    It was their habit to spend the week ends together.    This letter shows that they were having serious domestic troubles years before the defendant manifested any symptoms of mental disorder.    She continued to teach school until the June vacation in 1922.    It is most improbable that she would have been engaged to teach, or would have been able to retain her position as a teacher, if she were insane.    If she was sane enough to teach school, she

was sane enough to understand and comprehend the wrong she was doing in the physical assaults that she made on her husband.    There is no evidence that she manifested any symptoms of insanity prior to August, 1925, and at that time the evidence is conclusive that it had not progressed into the violent stage.    When she became violent she was committed to the State hospital.    That was not until October, 1926.    Except for her attacks upon the plaintiff, there was nothing unusual in her conduct until August, 1925. Her mother, who was a witness at the hearing, and who had ample opportunity to observe her conduct, did not testify to anything abnormal in her mental condition during the time that she was living with the plaintiff.    The plaintiff's father, a reputable attorney of many years standing at the Ingham county bar, also had opportunity for close study of the defendant.    He saw no indications of insanity.    We are impressed by the showing in the record that he used his best efforts to keep the parties together.    It is hardly likely that he would have taken this course if he had observed anything tending to show insanity. It is the testimony of all of the witnesses who came into closest contact with the defendant, that they observed nothing in her conduct to indicate insanity. Dr. Inch, medical superintendent of the Traverse City State Hospital, examined the defendant in September, 1925.    He testified:

"I formed the opinion on my first interview and subsequent interviews that she was mentally deranged and a case of beginning *dementia precox.*"

In view of the fact that in September, 1925, she had "a case of beginning *dementia precox,*" and the fact that during the time when she was involved in her domestic troubles she taught school and mingled with her friends without manifesting any indication of mental derangement, we conclude that in committing

the acts of cruelty complained of she was not influenced by the mental malady with which she is now suffering. It was a later development.

Complaint is made as to that provision of the decree which gives the custody of the child to the plaintiff. Because of the disability of the mother and the fitness of the father, we think the court was right in placing the child in his care. It is now with the defendant's parents in Kalamazoo. It is said that they take it every few days to visit the mother; "that she reacts to it as a normal mother should; that she plays with it, fondles it, and that the opportunity to see her son frequently is conducive to her welfare and improvement, and that for the present no harm is being done the child in taking it to see its mother frequently."

We appreciate the unfortunate situation of the mother, but under the circumstances the father is rightfully and lawfully entitled to the custody of the child. However, the mother's rights must be recognized. She should be given the opportunity of seeing the child at such reasonable times as can be arranged consistent with its comfort and safety. The decree should provide that the plaintiff take the child to Kalamazoo twice a month for that purpose. If conditions change so that a different arrangement may be advisable, either party may apply to the circuit court for Ingham county for a modification of the decree in this respect.

In view of the situation of the parties, the allowance of $25 a month for alimony is not sufficient. The decree will provide for the payment by the plaintiff of $50 a month until the further order of the circuit court. This will include the expenses of her maintenance at the State hospital. Neither party will have costs, but because it has been deemed advisable to modify the decree of the lower court with respect to the allowance of alimony, the plaintiff should pay

to the defendant an attorney fee of $100. A decree will be entered in accordance with this opinion.

SHARPE, C. J., and BIRD and FELLOWS, JJ., concurred with McDONALD, J.

CLARK, J. I concur, but the monthly alimony should be $40 per month.

STEERE and WIEST, JJ., concurred with CLARK, J.

SNOW, J., did not sit.