**Oscar B. WILLIS, Plaintiff-Appellant,**

v.

**Edith Mary WILLIS, Defendant-Respondent.**

No. 7332.

Springfield Court of Appeals.

Missouri.

Dec. 28, 1954.

Rehearing Denied Jan. 24, 1955.

Ronald J. Fuller, Rolla, for plaintiff-appellant.

White & White, Rolla, for defendant-respondent.

STONE, Judge.

Plaintiff, then 57 years of age, instituted this action for divorce on March 30, 1953, by the filing of his petition charging indignities by his wife, then about 49 years of age. Defendant's answer admitted the marriage but denied all other allegations in plaintiff's petition. At the close of the contested trial on March 16, 1954, the court found that "plaintiff is the innocent and injured party" and granted a divorce to him. On March 22, 1954, defendant "by her attorney" filed "Motion to Set Aside Divorce Decree" on the ground that "at the time the acts complained of by plaintiff, if any, were committed, the defendant was not accountable for and was incapable of understanding their nature or of restraining herself from their commission because of her mental condition and insanity." The prayer of defendant's motion was that the court "set aside its decree of divorce to plaintiff" and

"set said case down for further hearing on the question of defendant's insanity." On March 25, 1954, Dr. Harry H. Davis of Rolla testified in support of said motion; and, on March 26, 1954, *"on the court's own motion"* the decree of March 16 was set aside and "upon further consideration of the cause and the evidence adduced it is further ordered that plaintiff's petition is hereby dismissed." After unavailing motion for new trial, plaintiff appealed.

■ We consider first defendant's "Motion to Dismiss or Affirm" (Supreme Court Rule 1.16, 42 V.A.M.S.) because plaintiff-appellant delivered copies of his brief to defendant-respondent 34 days before the day set for hearing, rather than 45 days prior thereto as is required by Supreme Court Rule 1.09. Although notice of the setting for October 4, 1954, was mailed to counsel during July, 1954, defendant's attorney did not appear on the hearing date, sought no delay or continuance, made no complaint about tardy service of plaintiff's brief until defendant's motion to dismiss or affirm was filed more than two weeks after the case had been submitted, and has presented no brief on behalf of defendant. Under the stated circumstances and the record before us, we are of the opinion that "the interests of justice * * * require" (Supreme Court Rule 1.15) that defendant's motion be overruled and that this appeal be determined on its merits.

At the outset, it may be observed that we entertain grave doubt as to the authority of the trial court to enter the order and judgment of March 26, 1954, setting aside the decree for plaintiff and immediately thereafter, upon the same evidence and without retrial, rendering a new judgment of diametrically contrary import. It would seem to be obvious that the order and judgment of March 26 could not be sustained under Sections 510.290, 510.310, subd. 3, 510.330 (or Supreme Court Rule 3.22 supplemental thereto), or Section 510.370,[1] and that, if there be any warrant for that order and judgment, it must be found in Supreme Court Rule 3.25, which provides, in part, that "The trial court retains control over judgments during the 30-day period after entry of judgment and may reopen, correct, amend or modify its judgment for good cause within that time." (All statutory references are to RSMo 1949, V.A.M.S.)

■ Section 510.370, to which Rule 3.25 is "supplemental," plainly empowers the court only to *"order a new trial,"* which, if and when granted, leaves the case for trial de novo as though there had been no trial [Smith v. Smith, Mo.App., 176 S.W.2d 647, 649(3); Brayton v. Gunby, Mo.App., 267 S.W. 450, 452(5); Dierman v. Bemis Bros. Bag Co., 144 Mo.App. 474, 129 S.W. 229, 230(2), opinion adopted 163 Mo.App. 522, 143 S.W. 1197], leaves "no basis for the entry of a judgment" [Porter v. Chicago, B. & Q. R. Co., 325 Mo. 381, 28 S.W.2d 1035, 1037(3)], and does not permit rendition of a new judgment without retrial [Davis v. Lynn, 354 Mo. 1181, 193 S.W.2d 609, 610(2); Alt v. Dines, 227 Mo. 418, 126 S.W. 1035, 1036(3); Hurley v. Kennally, 186 Mo. 225, 85 S.W. 357, 358(3, 4)]. None of the terms "reopen", "correct", "amend" or "modify", as used in "supplemental" Rule 3.25, appear to have any connotation which would support the order and judgment of March 26.[2] But, although

---

1. Section 510.290 permits the court, upon after-trial motion, to set aside a jury verdict and judgment entered thereon and to enter judgment in accordance with a motion for directed verdict at the close of all the evidence. Section 510.310, subd. 3, provides that, upon after-trial motion, "the court may amend the judgment and opinion" in a case tried upon the facts without a jury. Section 510.330 and Supreme Court Rule 3.22 supplemental thereto deal with the granting of new trials and the grounds therefor. Section 510.370 provides that "Not later than thirty days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party * * *."

2. To *"reopen"* is to "open again"; and, to "open" is synonymous with to "unclose". Webster's New International Dictionary, 2nd Ed. "Reopening a case" is "to permit the introduction of new evidence and practically to permit a new trial." Black's

we thus express our views, we think it unnecessary to rest this opinion upon our interpretation of Rule 3.25 which, having been promulgated by the Supreme Court, perhaps more appropriately may be construed by that tribunal.

■ Even though a trial court has inherent jurisdiction, during the period for which it retains control over a judgment— formerly during the judgment term, now "during the 30-day period after entry of judgment" (Rule 3.25)—to set aside the judgment on the court's own motion "if, on a reconsideration and further reflection, he (is) satisfied that his first conclusions were wrong" [Hurley v. Kennally, supra, 85 S.W. loc.cit. 358], and even though "an outside suggestion may be the motivating cause of the investigation" resulting in the setting aside of the judgment [Savings Trust Co. of St. Louis v. Skain, 345 Mo. 46, 131 S.W.2d 566, 573–574], it has long been recognized that a judgment validly rendered following a trial upon the issues cannot be vacated except upon "some legal ground" [State ex rel. Wendling v. Arnold, 197 Mo.App. 1, 193 S.W. 292, 294(5); Thompson v. Wendling, Mo.App., 219 S.W. 671, 672(2); State ex rel. Gregory v. Henderson, 230 Mo.App. 1, 88 S.W.2d 893, 910] and that this salutary principle is applicable to a decree of divorce [Morris v. Morris, 60 Mo.App. 86, 88(1); Scales v. Scales, 65 Mo.App. 292, 294(2)].

■■ Although, in determining whether a motion for new trial should be granted, a trial court is vested "with a wide discretion to be exercised in furtherance of substantial justice" [Donati v. Gualdoni, 358 Mo. 667, 216 S.W.2d 519, 522(10)], the idea that a judgment should not be set aside arbitrarily, capriciously or without good cause is inherent in our practice. This thought finds expression in Supreme Court Rule 3.22 (supplemental to Section 510.330) providing that "The court may award a new trial of any issue *upon good cause shown*" and in Supreme Court Rule 3.25 (supplemental to Section 510.370) permitting a trial court to "reopen, correct, amend or modify its judgment *for good cause*"; and, whether entered on motion of a party or on the court's initiative, an order granting a new trial shall specify the grounds therefor. Sections 510.330 and 510.370. Compliance with this requirement is "a simple matter" [Hammond v. Crown Coach Co., Mo., 263 S.W.2d 362, 366]; and, when the court grants a new trial without specifying of record the ground or grounds therefor, the presumption is that the court "erroneously granted the motion for new trial", "the burden of supporting such action is placed on the respondent", and "it shall never be presumed that the new trial was granted on any discretionary grounds" [Supreme Court Rule 1.10; Drake v. Hicks, Mo., 261 S.W.2d 45, 48(1)]. It logically follows that the considerations which motivated legislative imposition of the quoted requirements and judicial declaration of the stated presumptions with respect to the granting of a new trial would, a fortiori, compel recognition and application of the

Law Dictionary, 4th Ed., p. 1462.

The verb *"correct"* is synonymous with "rectify, emend, remedy, redress, amend, reform, revise." Webster's Dictionary of Synonyms, 1st Ed., p. 202. "A motion to 'correct' a judgment is simply another way of asking for an amendment or modification of a judgment." Ryan v. Brown, 51 Misc. 67, 99 N.Y.S. 868, 869(2). See also Friedlander v. Lachman, Hirsch & Co., Sup., 133 N.Y.S. 1097, 1098; Harris County v. Bassett, Tex.Civ.App., 139 S. W.2d 180, 183(4).

"*Modification*' is not exactly synonymous with 'amendment', for the former term denotes some minor change in the substance of the thing, without refer-

ence to its improvement or deterioration thereby, while the latter word imports an amelioration of the thing (as by changing the phraseology of an instrument, so as to make it more distinct or specific) without involving the idea of any change in substance or essence." Black's Law Dictionary, 4th Ed., p. 1155. "'*Modify*' ordinarily is not used in the sense of completely setting aside the thing to be modified,'" and "'(t)he power to modify anything does not imply a power to substitute a thing entirely different.'" Van Deusen v. Ruth, 343 Mo. 1096, 125 S.W. 2d 1, 3(3). See also Cross v. Nee (D.C. Mo.), 18 F.Supp. 589, 594(4).

same requirements and presumptions with respect to action of a trial court in not only setting aside a judgment theretofore validly entered but also, upon the same evidence and without retrial, rendering a new judgment for the opposite party (if, contrary to our expressed opinion, such action otherwise were authorized and permitted).

 That the order and judgment of March 26 in the instant case specified no ground on which the prior judgment of March 16 was set aside and a new one entered, and that defendant has made no pretense of carrying "the burden of supporting such action" (Rule 1.10), would make it unnecessary and perhaps even inappropriate to go further in this discussion were it not for the fact that this is an action for divorce "with which the state is concerned" [Hartle v. Hartle, Mo.App., 184 S.W.2d 786, 789(3)], to which society represented by the state is a party [Koslow v. Taylor, 356 Mo. 755, 203 S.W.2d 433, 437 (4); Wagner v. Shelly, Mo.App., 235 S.W. 2d 414, 417(4)], and in which "(t)he conscience of the court must protect the public interest" [State ex rel. Couplin v. Hostetter, 344 Mo. 770, 129 S.W.2d 1, 4(6)]. Being mindful of the foregoing and of the holding that, even though insanity is not pleaded affirmatively [Bethel v. Bethel, 181 Mo.App. 601, 164 S.W. 682, 684(3)], a decree of divorce may not be granted to plaintiff for acts committed by defendant while insane [Crow v. Crow-Humphrey, 335 Mo. 636, 73 S.W.2d 807, 812(3); Thomason v. Thomason, Mo.App., 262 S.W.2d 349, 352; Fossett v. Fossett, Mo.App., 243 S.W.2d 625, 632(1); Dunn v. Dunn, 240 Mo.App. 87, 216 S.W.2d 141, 143(5)], we proceed to a consideration of whether defendant in the instant case was "insane" at the time of the acts complained of. In approaching this question, it should be borne in mind that the legal presumption that every person is sane [Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459, 464(6); Reynolds v. Maryland Casualty Co., 274 Mo. 83, 201 S.W. 1128, 1131(2); Rapp v. Rapp, Mo.App., 238 S.W.2d 80, 91(11)] obtains until it takes flight and vanishes in the light of contrary evidence [Edwards v. Business Men's Assur. Co. of America, 350 Mo. 666, 168 S.W.2d 82, 90(13); State ex rel. United Mut. Ins. Ass'n v. Shain, 349 Mo. 460, 162 S.W.2d 255, 263(11)], and that the burden of proving insanity is upon the party asserting it [Fendler v. Roy, supra, 58 S.W.2d loc. cit. 464; Dunn v. Dunn, supra, 216 S.W.2d loc.cit. 143(6)].

Although insanity had not been pleaded, Dr. R. E. Breuer of Newburg, called as a witness for defendant, testified that, when he last treated her "as much as five years" before trial, "Her mind was affected, it was; yes." As to whether "the nature of her mind" was "likely to pass away or continue or get worse," he said, "I don't believe I would be able to answer sufficiently to give you any information on the subject" although similar cases "don't improve too much, no matter who treats them." To an inquiry as to "what was the foundation of her trouble," the doctor responded "her trouble was largely mental, a lot of it was mental, some of it was physical—and I think that answers your question, don't it?" This witness expressed the opinion that "her physical trouble" was *not* "traceable to her menopause." When asked by the court "the main question whether she understood and knew right from wrong," the doctor's reply was "if I must answer that, I would say that she wasn't responsible for her acts at times, other times she was." But, there was no explanation of the vague and general references to "the nature of her mind," "her ailment" or "her trouble"; and, the testimony of Dr. Breuer was so brief, fragmentary, incomplete and inconclusive as to be of little or no value.

When asked "did * * * anybody tell you you had mental trouble?" *defendant* replied "they told me change of life." She testified that, during the period from 1946 to 1952, she had gone "to five doctors and none of them wouldn't help me," but that "I haven't doctored for a year and a half or two years now." *Plaintiff* said that "all the doctor ever told me was just menopause * * * —they said as far as her physical condition is concerned, they couldn't find anything wrong with her," and that the doctor "never said anything about her mental condition."

The only other evidence bearing upon the alleged insanity of defendant (first specifically asserted in defendant's after-trial motion) was the testimony of Dr. Davis at the after-trial hearing on March 25, 1954. He had made eight examinations of defendant, the first having been in 1947 and the last (arranged by defendant's counsel) having been on the day before the hearing, but he had not examined defendant during the period from February, 1951, to March 24, 1954. Although Dr. Davis thought that "this lady is not responsible for all of her activities—that is due to the menopausal disturbance that women have along generally about this age," the thing emphasized by him was that, as to defendant's statements "that she had been out with other men and that she could get any man she wanted," "I don't think in many instances she would know whether she was speaking the truth or not"—"we wouldn't know by her statement whether she had committed that (sex) act or not." When asked, "if it should develop that she did commit such an act, would she be capable of restraining herself from committing the act because of her mental condition," Dr. Davis said "I don't know." The doctor's statement that "in many instances, this woman doesn't know right from wrong" was followed by these explanatory comments: "I would say temporarily, particularly during * * an interval at some time in the month that she wouldn't know that because we know definitely that women are not the same during their menstrual phase. * * * At times during the month, all women within the period of * * * approximately four to seven days, they do things, not only this lady but * * * other women, that they are not accountable for; * * * all women * * * do have little idiosyncrasies at that time." But, in response to a direct inquiry, the doctor replied, "No, she is not an insane person."

■■■ The rationale of the doctrine that acts committed while insane are not grounds for divorce is that, in setting forth the "causes of divorce" [Section 452.010], the Legislature did not intend "to cover acts committed by one who was incapable of understanding their nature or of restraining himself from their commission". [Dunn v. Dunn, supra, 216 S.W.2d loc. cit. 143(4)]. See also Thomason v. Thomason, supra, 262 S.W.2d loc.cit 352(4). Thus, it would appear that the insanity, which will constitute a good defense in an action for divorce, must be such as deprives the defendant's conduct of the element of wilfulness and as divests the defendant of the use of his reason to the extent of his being unable to differentiate between right and wrong, or that, if capable of so differentiating, defendant must be acting by force of an irresistible impulse generated by a diseased mind and not by volition.[3] Annotation 19 A.L.R.2d 144, 151–155; Wharton & Stille's Medical Jurisprudence (5th Ed.), Vol. I, Sec. 53; Nelson on Divorce and Annulment (2nd Ed.), Vol. I, Sec. 9.06. The requirements of this test are not satisfied by a showing of insane delusions [Youmans v. Youmans, 3 N.J. Misc. 576, 129 A. 122; Smith v. Smith, 40 N.J.Eq. 566, 5 A. 109, 127, affirming 33

3. These requirements are consonant with the principle that " 'to invalidate an act or a deed of a person (for want of mental capacity), it is not sufficient to merely show that he or she suffers from senile dementia, or is possessed of a mental weakness. One must go further, and show that the person does not possess sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged.' " Weakley v. Weakley, 355 Mo. 882, 198 S.W.2d 699, 702; In re Nelson's Estate, Mo.App., 185 S.W.2d 890, 895(1). And, they are likewise consistent with the rule that, in a sanity hearing, "there is no basis for an adjudication that one is of unsound mind * * * unless it is shown that his powers of reasoning and comprehension have been so far destroyed or reduced by mental weakness * * * that he is incapable of knowing and appreciating the nature and consequences of his acts in respect to his own conduct and the management of his property." In re Delany, Mo.App., 226 S.W.2d 366, 373 (6). See also In re Bearden, Mo.App., 86 S.W.2d 585, 594(12, 13); Harrelson v. Flournoy, 229 Mo.App. 582, 78 S.W.2d 895, 899(4). It has been well said that "mental capacity may be co-existent with mental illness." McElroy v. Lynch, Mo., 232 S.W.2d 507, 514.

628

N.J.Eq. 458, 461; Champagne v. Duplantis, 147 La. 110, 84 So. 513, 514(3); Walton v. Walton, 57 Neb. 102, 77 N.W. 392, 396 (9); Dochelli v. Dochelli, 125 Conn. 468, 6 A.2d 324, 325–326(2)], high-strung nerves, unrestrained impulsiveness and lack of control [Kruse v. Kruse, 179 Md. 657, 22 A.2d 475, 478(3)], mental irresponsibility [Gardner v. Gardner, 239 Mich. 306, 214 N.W. 133, 134(3)], psychoneurosis [Bailey v. Bailey, 115 N.J.Eq 565, 171 A. 797, 799(1)], a manic-depressive condition [Mather v. Mather, 143 Pa. Super. 589, 18 A.2d 484, 486], or depraved character and licentious disposition even in a person of weak mind [Schieck v. Schieck, 5 Neb. 142, 97 N.W. 474; Hill v. Hill, 27 N.J.Eq. 214(2)].

▮ Entry of a decree for plaintiff in the instant case on March 16, 1954, demonstrates that the trial court did not then regard the defendant as having been insane at the time of the indignities charged; and, there was no finding of insanity in the order and judgment of March 26, which was entered "on the court's own motion," did not rule defendant's after-trial motion presenting the issue of insanity, and indicated no ground or reason for the court's action. Simply stated, we have here no more than the opinion of one medical witness that "as much as five years" prior to trial defendant "wasn't responsible for her acts at times, other times she was," due to some unexplained "condition" or "ailment" but not "traceable to her menopause"; and, the opinion of an after-trial medical witness that defendant's statements about her conduct were undependable and that she "is not responsible for all of her activities * * * due to the menopausal disturbance." Certainly, we cannot relieve defendant from the legal effect of her indiscretions, as shown in evidence, on the suggestion of her after-trial witness that

"all women * * * do things * * * that they are not accountable for" during some four to seven days each month—an idea which, if approved by judicial pronouncement, might have far-reaching and dangerous ramifications. We are impelled to the conclusion that the evidence before us falls far short of establishing that defendant was insane "at the time the acts constituting grounds for divorce were committed" [Koslow v. Taylor, supra, 203 S.W. 2d loc. cit. 437(2)], and accordingly that a decree against her is not barred by insanity.

▮ Since defendant's after-trial motion was predicated solely on her alleged insanity and since the sufficiency of the evidence to justify otherwise a decree for plaintiff has not been challenged either in the trial court or upon appeal, discussion of the indignities pleaded and of the evidence offered in support thereof becomes unnecessary. It will suffice to say that, after painstaking review of the entire record, we have no hesitancy in holding that plaintiff adequately pleaded and proved (corroborated by many damaging statements and admissions by defendant, herself) that defendant had offered such indignities [4] as had rendered his condition intolerable [Key v. Key, Mo.App., 93 S.W. 2d 256, 259(9); Trigg v. Trigg, 226 Mo. App. 284, 41 S.W.2d 583, 590(8, 9); Bowers v. Bowers, 225 Mo.App. 1197, 35 S.W. 2d 39, 42–43(3); Bedal v. Bedal, Mo.App., 2 S.W.2d 180, 183–184(3)], including unexplained indiscretions with a Mr. H——, to whom reference is made throughout the record, not shown to have been limited or confined to any particular portion of each month. It has been said repeatedly that, where plaintiff's petition and proof are sufficient, the right to a divorce is a legal right, the granting or withholding of which is in no way dependent upon the discretion of the trial court [Hess v. Hess,

4. "Indignities are such acts as consist of unmerited contemptuous conduct, or words and acts of one spouse toward the other which manifest contempt, or contumely, incivility or injury accompanied with insult and amounting to a species of cruelty to the mind." Hoffman v. Hoffman, Mo.App., 224 S.W.2d 554, 561(5). To the same effect, see Hogsett v. Hogsett, Mo.App., 83 S.W.2d 152, 153(2); Wheat v. Wheat, Mo.App., 279 S.W. 755, 759; Lynch v. Lynch, 87 Mo.App. 32, 37(4).

Mo.App., 183 S.W.2d 560, 565(11); Needham v. Needham, Mo.App., 299 S.W. 832, 834(1); Marolf v. Marolf, 191 Mo.App. 239, 177 S.W. 819(3); Hamberg v. Hamberg, 147 Mo.App. 591, 126 S.W. 808, 809; Miles v. Miles, 137 Mo.App. 38, 119 S.W. 456(1); annotation 74 A.L.R. 271], and that, under such circumstances, it is as much the duty of the court to enter a decree of divorce as it would be to enter a judgment upon proof of plaintiff's cause of action in any other civil suit [Wald v. Wald, 119 Mo.App. 341, 96 S.W. 302, 305 (5); Lynch v. Lynch, 87 Mo.App. 32, 36 (2); Ulrey v. Ulrey, 80 Mo.App. 48, 51].

We think that the trial court properly entered a decree of divorce for plaintiff at the close of the trial, although the concurrent allowance of permanent alimony to defendant was manifestly erroneous since she was found to be the guilty party. Section 452.090; Smith v. Smith, 350 Mo. 104, 164 S.W.2d 921, 923 (4); Rhoads v. Rhoads, 342 Mo. 934, 119 S.W.2d 247, 251(6); McIntire v. McIntire, 80 Mo. 470, 472(1). The order and judgment of March 26, 1954, is reversed and the cause is remanded with directions to enter a decree of divorce for the husband.

McDOWELL, P. J., concurs.