In re the MARRIAGE OF James E. BROWN and Phyllis I. Brown.

James E. BROWN, Appellant,

v.

Phyllis I. BROWN, Respondent.

No. 19252.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 26, 1994.

Ted Von Willer, Jr., Springfield, for appellant.

Stephen P. Carlton, Carlton & Mayo, Carthage, for respondent.

CROW, Judge.

James E. Brown ("James")[1] appeals from a decree dissolving his 14–year marriage to Phyllis I. Brown ("Phyllis"). James com-

plains the trial court erred in (1) awarding Phyllis "a $20,000.00 interest" in James' "non-marital farm," and (2) denying James' motion to set the decree aside. That motion alleged James was suffering "memory impairment" at time of trial, which prevented him from "meaningfully" participating in the trial. We address the second point first.

■ The case was tried October 22, 1993. Each party appeared in person and with counsel. The parties were the only witnesses.

James' testimony during his case-in-chief began at page 3 of the transcript and ended at page 69. He also testified in rebuttal at pages 115 to 128. His testimony was some 63 percent of all the trial testimony.

After trial, James' present lawyer replaced James' trial counsel and filed the motion referred to in the first paragraph of this opinion. The motion (verified by James) averred, among other things, that (a) James saw Dr. Joseph T. Quay, III, the day before trial because of ·"severe depression, severe distress, severe anxiety and nervousness"; (b) Quay prescribed a drug, Xanax, which James began taking that day—October 21, 1993; (c) James believes he was suffering from side effects of the drug on the trial date, resulting in severe memory impairment and inability to assist counsel in presenting the case; (d) James was "institutionalized" after trial at "Ozark Center in Joplin, Missouri, where [he] underwent treatment"; (e) James "has very little recollection of any events transpiring between Thursday, October 21, 1993 and Tuesday, October 25, 1993 when [he] discovered that he was at the Ozark Center." The motion also alleged, in conclusional terms, that pertinent evidence was not presented at trial. The motion identified no specific evidence.

The motion was accompanied by affidavits of (1) Dr. Quay, (2) Dr. Sharad Gavankar, Medical Director of Crisis Stabilization Services at Ozark Center, and (3) James.

Dr. Quay's affidavit stated, in substance, that James was undergoing stress because of

1. For brevity and clarity, we refer to the parties by their respective forenames. We mean no disrespect.

his job and the dissolution, hence Quay prescribed Xanax on October 21, 1993, to alleviate anxiety; that James took one pill that day and a second pill the next day; that James did not recall how he went to or from the courthouse, and remembered nothing until October 25, 1993, when he realized he was at Ozark Center; that in Quay's opinion James was not responsible for anything that happened between October 21 and 25, 1993; and that inasmuch as Xanax has the side effect of causing severe memory impairment, it may have had that effect on James.

Dr. Gavankar's affidavit stated only that James was admitted to the Crisis Stabilization Unit at Ozark Center on October 22, 1993, and discharged six days later.

James' affidavit stated that except for a vague recollection of sitting in a chair and stating his name, he recalled nothing after Dr. Quay prescribed Xanax until he (James) woke up in Ozark Center on October 25, 1993.

The trial court held a hearing November 17, 1993, on James' post-trial motion. James presented no evidence other than the three affidavits described above, and he identified no specific evidence that was omitted at trial.

The trial court stated:

"I am not convinced that this allegation that he suffered memory loss is true. Even the affidavit of Dr. Quay doesn't help—is not conclusive. In his last paragraph, he states that Xanax may impair memory in some people and that it may have done that to Mr. Brown. All that Dr. Gavankar states is that he was hospitalized on October 22nd and discharged on October the 28th, 1993.

I was present at the trial. I presided over the trial, and it was a long trial. I think it took all morning. Mr. Brown fully participated in the trial. He didn't appear to have any memory loss. From time to time, he did have a selective memory, as many divorce litigants often do, to help their own case or harm the other side's case. He gave testimony about detailed financial matters, and he appeared competent in every way you could imagine. He did not seem to have any memory loss whatsoever.

And I think to grant a new trial, or set aside the decree based on what I've heard today in these affidavits would be speculation and conjecture."

With those comments, the trial court denied the motion.

James cites five cases in support of his second point. None addresses a situation where a party in a civil case attended trial and testified, then later sought a new trial because of alleged drug-induced mental inability to meaningfully participate in the trial. Our independent research has turned up no such case. The lone case cited by Phyllis in response to James' second point is *Clark v. Reeves,* 854 S.W.2d 28 (Mo.App.W.D.1993). It concerns the determination of competency of a witness, not the mental ability of a party to understand what is occurring at trial and to assist counsel. James' second point thus takes us into unmapped territory.

In a slightly analogous criminal case, *Smith v. State,* 513 S.W.2d 407 (Mo. banc 1974), *cert. denied,* 420 U.S. 911, 95 S.Ct. 832, 42 L.Ed.2d 841 (1975), the Supreme Court of Missouri addressed an allegation by a prisoner in a postconviction proceeding that when he pled guilty, he was incompetent because of drug addiction. Pointing out that the transcript of the guilty plea proceeding contained a statement by the prisoner to the judge that he was not under the influence of any drugs and had experienced no withdrawal symptoms during the six months immediately preceding the plea, *id.* at 409, the Supreme Court held the prisoner's allegation that he was incompetent to plead because of drug addiction was refuted by the record. *Id.* at 411[5]. Denial of relief without an evidentiary hearing was affirmed.

Here, James testified at trial about the farm he owned before the marriage, the debt against it at the time of the marriage, the amount by which the debt was reduced during the marriage, the parties' employment during the marriage, his health problems and hospitalizations, an inheritance he received from his father's estate, a home owned by Phyllis at the time of the marriage, money spent on it during the marriage, a trust he

had formed for his children (by an earlier wife), sundry investments, farm equipment bought before and during the marriage, the placement of his tillable land in the "Conservation Reserve Program," various medical debts, some transfers of assets after the separation, the sale of a motor vehicle after separation, payment of a $45,000 debt during the marriage arising from an Arkansas investment, and the amounts owed on three credit cards.

Much of James' testimony was not contradicted by Phyllis, hence we infer she believed it was correct. The majority of facts set forth in the statement of facts in James' brief is based on his testimony. In her brief, Phyllis adopts James' statement of facts, supplemented by additional facts drawn from his testimony.

It is thus arguable that James' contention that a drug stupor rendered him mentally unable to meaningfully participate in the trial is refuted by the record. The Supreme Court of Missouri found a trial record helpful in *Murphy v. Murphy*, 358 S.W.2d 778 (Mo. 1962), where an ex-husband alleged a decree ending his 31–year marriage should be set aside because he was mentally incompetent at trial and thus "deprived of a defense by a sane person." *Id.* at 779. The ex-husband had been hospitalized for a few months of mental treatment three years before trial. A psychologist, presented as a witness by the ex-husband in support of the post-decree motion, testified the ex-husband was not competent to defend the case or testify at trial.

Affirming the trial court's denial of relief, the Supreme Court noted, *inter alia*, that the ex-husband was represented by counsel at trial and made a thorough defense, the ex-husband testified at length (34 transcript pages) and covered all the issues at trial, and for more than three years immediately preceding trial had been able to manage his personal and business affairs. *Id.* at 782.

In *Willis v. Willis*, 274 S.W.2d 621 (Mo. App.1954), a wife filed a post-trial motion to set aside a divorce decree, asserting the indignities which supplied the grounds for the decree were committed by her at a time when she was incapable of understanding their nature because of her mental condition and insanity. *Id.* at 623. The appellate court held there is a legal presumption that every person is sane, and the burden of proving insanity is upon the party asserting it. *Id.* at 626.

■ Although James does not, as we understand him, maintain he was insane at time of trial, he does assert his drug-related mental condition rendered him mentally unable to meaningfully participate in the trial. Applying the rationale of *Willis*, we hold the burden of proving that proposition was on James. Assigning it to him is consistent with the procedure in criminal cases, which places on the accused the burden of showing he was incompetent to stand trial and assist in his defense. *State v. Caudill*, 789 S.W.2d 213, 215[5] (Mo.App.W.D.1990); *State v. Lackey*, 539 S.W.2d 537, 540–41[4] (Mo.App. 1976).

■ Ordinarily, in a court-tried case the appellate court is bound by the trial court's findings of fact, *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 519[3] (Mo.App. W.D.1985), and an appellate court will not set aside a decree based upon a review of the weight of the evidence unless firmly convinced that the decree is erroneous. *Hotchkin v. Weber*, 655 S.W.2d 858, 860[4] (Mo. App.W.D.1983). Although an affidavit may be offered as evidence in support of a motion, as in the case of oral evidence the trial court can believe or disbelieve the statements in such affidavit. *Restorative Services, Inc. v. Professional Care Centers, Inc.*, 793 S.W.2d 141, 144[2] (Mo.App.E.D.1990); *Flegel v. Holmes*, 614 S.W.2d 779, 780[3] (Mo.App. E.D.1981); *Cloyd v. Cloyd*, 564 S.W.2d 337, 343 (Mo.App.1978).

As we have seen, the trial court found the affidavits unpersuasive. That was its prerogative. Furthermore, the trial court had the opportunity (which we lack) to observe James' appearance and demeanor, his responsiveness on the witness stand, and other intangibles unshown by a printed record. Finally, we note James testified he worked as an emergency medical technician at a hospital the night before trial (inferably after he had taken the first Xanax pill).

Having read the transcript and affidavits, and mindful that James had the burden of proof on the mental issue, we are not firmly convinced the trial court erred in rejecting James' claim that he was mentally incapable of meaningfully participating in the trial. James' second point is denied.

■ We now address James' first point. As reported earlier, he owned a farm before he married Phyllis. In its decree,[2] the trial court set apart the farm to James as his nonmarital property. The decree thereafter provided:

> "The Court further finds that [James] shall pay to [Phyllis] the sum of $20,000.00. [James] shall have twelve months from the date of the Decree to pay [Phyllis] and the sum due [her] shall bear statutory interest at nine percent (9%) per annum from the date of the Decree until paid. This Judgment shall be a lien on [James'] non-marital real estate described above."

We glean from the record that the trial court awarded Phyllis the $20,000 because (1) marital funds had been spent to reduce the lien indebtedness on James' farm, (2) James sold marital property, a van, after the separation and spent the proceeds, and (3) James withdrew marital funds from certain investment accounts after the separation and kept the funds for himself.

James' first point maintains the evidence was insufficient to support (a) the $20,000 award, and (b) securing it by a lien on his farm.

■ We begin our consideration of the point by observing that the trial court was free to believe or disbelieve all, part or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[1] (Mo. banc 1989). Consequently, when determining the sufficiency of the evidence, we accept as true the evidence and inferences from it favorable to the decree, and disregard contrary evidence. *Id.* at 654[2].

■ A trial court, when dividing marital property, may consider the amount of marital funds expended upon one spouse's separate property to reduce a mortgage, *Stapleton v. Stapleton*, 637 S.W.2d 210, 211[1] (Mo.App. E.D.1982), may, in its discretion, award cash in lieu of property, *Levesque v. Levesque*, 773 S.W.2d 220, 223[11] (Mo.App.E.D.1989), and may impose a lien upon a party's separate property to ensure payment of a sum required for a just division of marital property. *Costley v. Costley*, 717 S.W.2d 540, 545[5] (Mo.App.S.D.1986).

■ The standard of appellate review in Rule 73.01(c)[3] as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), applies to decrees of dissolution of marriage. *T.B.G.*, 772 S.W.2d at 654. The decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.*

■ The Dissolution of Marriage Act consigns the division of marital property to the sound discretion of the trial court. *Dardick v. Dardick*, 670 S.W.2d 865, 868 (Mo. banc 1984). Appellate courts must defer to the trial court's decree unless it is deficient under the *Murphy* standard or an abuse of discretion is shown. *Dardick*, 670 S.W.2d at 868.

We hold the trial court's division of marital property, which includes the $20,000 cash award to Phyllis secured by the lien on James' farm, is supported by substantial evidence and is not against the weight of the evidence, that no abuse of discretion is shown, that no error of law appears, and that an opinion setting forth all of the evidence pertinent to the division of marital property would have no precedential value. Accordingly, James' first point is denied and the

---

2. The trial court filed a decree November 15, 1993. Weeks later, the trial court filed an amended decree. Although neither party questions the validity of the amended decree, it is arguable that the trial court waited too long to enter it, thereby losing the power to do so. Because the decrees are alike in regard to the

provision attacked by James' first point, we need not, and do not, decide whether the amended decree is valid.

3. Rule references are to Missouri Rules of Civil Procedure (1994).

division of marital property is upheld per Rule 84.16(b).

The decree of dissolution of marriage is affirmed.

PREWITT and PARRISH, JJ., concur.